IRVIN FRANK HILL, Employee-Plaintiff v. HANES CORPORATION, Employer, and AETNA LIFE & CASUALTY INSURANCE COMPANY, Carrier-Defendants

No. 144A86

(Filed 4 March 1987)

1. **Master and Servant § 66— stress induced depression—total disability—evidence sufficient**

    The evidence was sufficient to support an Industrial Commission conclusion that plaintiff was entitled to compensation under N.C.G.S. 97-29 for total disability due to stress induced depression where the testimony of plaintiff's psychiatrist as a whole formed a sufficient evidentiary basis for the Commission to find that plaintiff's depression was caused by his physical injuries and that the depression in turn caused him to be incapable of working, even though a contrary finding might also have been available.

2. **Master and Servant § 69— scheduled compensable injury—total incapacity for work—compensation for both**

    An employee may be compensated for both a scheduled compensable injury under N.C.G.S. 97-31 and total incapacity for work under N.C.G.S. 97-29 where the total incapacity is caused by a psychiatric disorder brought on by the scheduled injury. The "in lieu of" provision of N.C.G.S. 97-31 applies only when all of the employee's injuries fall within those set out in the schedule.

3. **Master and Servant § 69— maximum medical improvement in 1980—total incapacity beginning in 1982—compensable**

    The Industrial Commission did not err by making an award for total incapacity to begin on 8 November 1982, even though plaintiff had reached maximum medical improvement on 1 November 1980, where the Commission found that plaintiff had reached maximum medical improvement physically in 1980 and awarded compensation under the statutory schedule for the partial loss of his legs without regard to how this loss affected plaintiff's capacity to work; found that plaintiff's stress related depression rendered him totally disabled by 8 November 1982; and concluded that he was entitled to compensation for so long as he remained disabled. N.C.G.S. 97-31.

4. **Rules of Civil Procedure § 60.4; Master and Servant § 97.2— newly discovered evidence—Rule 60 motion in Court of Appeals—consideration by Court of Appeals—error**

    In an Industrial Commission proceeding in which plaintiff was awarded compensation for a total disability due to a stress related depression arising from his injuries, the Court of Appeals erred by considering on the merits a motion filed by defendants for a new hearing under N.C.G.S. 1A-1, Rule 60(b)(2) and (6) based on newly discovered evidence of plaintiff engaging in physical activities inconsistent with testimony offered at the hearing. Defendants' request in the motion that the Court of Appeals decide the merits of the appeal prior to remanding the case to the Industrial Commission for considera-

tion of the motion effectively withdrew the motion; after deciding the merits of the case adversely to defendants, the Court of Appeals should have remanded the motion for an initial determination by the Industrial Commission. N.C.G.S. 97-47.

Justice MITCHELL did not participate in the consideration or decision of this case.

APPEAL by defendants from a decision of a divided panel of the North Carolina Court of Appeals, 79 N.C. App. 67, 339 S.E. 2d 1 (1986), affirming an opinion and award of the North Carolina Industrial Commission and denying a certain motion filed by defendants in the Court of Appeals. This Court allowed on 7 April 1986 defendants' petition for further review as to additional issues in the case not addressed by the dissenting opinion. The case was argued on 10 December 1986.

*William Z. Wood, Jr., for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice, by Keith W. Vaughn and Nancy R. Hatch, for defendant appellants.*

EXUM, Chief Justice.

The employee-plaintiff, Irvin Frank Hill, sustained a compensable injury by accident while working for his employer, Hanes Corporation, on 12 March 1979 when he slipped, fell, and struck his upper back between the shoulder blades on the corner of a machine. As a result he was temporarily totally incapacitated for work. He later developed a "20 percent disability in the usage of both legs" caused by a thickening of the membrane surrounding his spinal cord at the point of impact. Finally he developed a mental depression, which the Industrial Commission found totally incapacitated him for work and was causally related to his earlier injury.

The Commission awarded Hill compensation under N.C.G.S. § 97-29 for temporary total disability due to his back injury; under the scheduled injury statute, N.C.G.S. § 97-31(15), for a 20 percent loss of use of both legs; and under N.C.G.S. § 97-29 for total disability caused by depression for so long as the depression persisted. The Court of Appeals affirmed. It also denied defendants' motion for a new hearing by the Commission. This motion, filed with the Court of Appeals pending that Court's decision on

the merits, was made pursuant to Civil Procedure Rule 60(b)(2) (newly discovered evidence) and (6) ("any other reason justifying relief . . .").

Questions presented are whether the Court of Appeals correctly concluded: (1) there was evidence sufficient to support the Commission's finding that Hill's depression totally incapacitated him for work and was causally related to his physical injuries suffered on the job; (2) the Commission properly awarded compensation under both N.C.G.S. § 97-31, the scheduled injury statute, and N.C.G.S. § 97-29 for total disability due to depression; and (3) defendants' Rule 60(b) motion should have been denied. We think the Court of Appeals made the correct conclusion in the first two instances and affirm its decision on these issues. We conclude that it erred in addressing defendants' Rule 60(b) motion, vacate its denial of that motion, and remand the motion to the Court of Appeals for further remand to the Industrial Commission for initial determination.

I.

All parties agree that the employee, Irvin Frank Hill, sustained a compensable injury by accident while working for his employer, Hanes Corporation, on 12 March 1979 when he slipped, fell, and struck his upper back between the shoulder blades on the corner of a machine. Taking into consideration the unchallenged evidence before and findings of the Industrial Commission, there seems to be no dispute between the parties as to the following facts: Hill's accident on 12 March 1979 caused him to experience pain in the back, but he continued to work until worsening pain in his back caused him to consult with Dr. Charles Gunn, Jr., who was employed by Hanes and whose duties included caring for patients at the plant where Hill worked. Dr. Gunn, upon taking a history of Hill's injury and noting Hill's complaint of pain in the thoracic, or chest, area of his spine, advised plaintiff to stop working. Following Dr. Gunn's advice, plaintiff did not return to work until 11 April 1979. He continued to work until 9 July 1979 when he began to experience such weakness in his legs that it became difficult for him to stand. He left work on 9 July 1979 and has done no work for wages since that date.

By agreements dated 18 April 1979 and 18 December 1979 defendants voluntarily agreed to pay plaintiff the sum of $156.79

per week (two-thirds of Hill's average weekly wage of $235.19) for the "necessary weeks" for "temporary total" disability.

There also seems to be no dispute in the case regarding the nature of Hill's physical injuries. The blow to his back caused a thickening of the membranes around his spinal cord. An October 1979 myelogram "revealed almost complete obstruction" of the space around the spinal cord at thoracic vertebrae 9-10. This insult to the spinal cord caused Hill to experience loss of sensation and weakness in both legs. Surgery to relieve the condition performed in October 1979 resulted in little improvement. According to the testimony of the neurosurgeon who performed the October 1979 surgery and who followed Hill as a patient through 1980, the weakness in Hill's legs in November 1980 so limited "his ability to perform his original job . . . that I believe him to be totally disabled. I do believe that Mr. Hill could theoretically perform some type of activities, particularly on the basis of part-time work and not full time, since he feels very easily exhausted and tired after most or any activity." The neurosurgeon rated Hill as having a 20 percent loss of use of each leg.

The neurosurgeon recommended that Hill be given a psychological evaluation, and on 8 November 1981, Hill came under the care of Dr. Branham, a psychiatrist. Dr. Branham diagnosed Hill as suffering from depression. According to Dr. Branham, Hill's depression manifested itself in insomnia, difficulty in concentration, accentuation of pain, psychomotor slowing and loss of interest in activities he formerly found enjoyable. Dr. Branham's testimony will be discussed in more detail below.

The Commission made unchallenged findings (paraphrased except where quoted) as follows:

1. Plaintiff sustained an injury by accident on 12 March 1979 when he slipped, fell, and struck his back between the shoulders, experiencing back pain.

2. His pain worsened, but he returned to work on 11 April 1979 and continued to work through 9 July 1979. He has done no work for wages since that date.

3. While under the care of Dr. Gunn in August 1979 he complained of back pain and loss of feeling, burning sensations and weakness in his lower extremities.

4. He was seen by Drs. Griffin and Jackson for evaluation of lower extremity weaknesses. Dr. Jackson hospitalized him in October 1979 for a myelogram. The myelogram revealed complete obstruction at thoracic vertebrae 9-10, for which plaintiff underwent a bilateral exploratory laminectomy with decompression of arachnoidal adhesions and blockage. The surgery was performed by Dr. Ernesto de la Torre to whom plaintiff had been referred by Dr. Jackson.

5. By 1 November 1980 plaintiff's "physical condition" had stabilized and he had reached "maximum medical improvement physically. His physical condition has remained essentially unchanged since that date." Plaintiff has sustained a 20 percent permanent partial disability of each leg.

6. Before March 1979 plaintiff had never experienced depression or other psychological problems. He is 54 years old, was a professional baseball player for nine years and has worked for defendant employer for 24 years before his injury in 1979.

7. Since 9 July 1979 plaintiff has been physically unable to perform the job he was doing or any other job offered to him by defendant employer. Because of the injury he has suffered he has been and remains unable to sit or stand on a prolonged basis.

II.

[1] The Commission concluded that Hill was entitled to compensation under N.C.G.S. § 97-29 for total disability due to "stress induced depression which rendered him totally disabled from 8 November 1982 . . . for so long as he remains so disabled." This conclusion was based on the Commission's Finding No. 8 (paraphrased except where quoted):

On 8 November 1982 plaintiff came under the care of Dr. Branham, a psychiatrist, and has since then remained under Dr. Branham's treatment, including antidepressant medications, for depression. "As a result of the injury by accident . . . and the attendant residuals in his lower extremities and his inability to work, he experienced stress which at least by 8 November 1982 resulted in depression and rendered him totally disabled." Plaintiff "continues to experience sleep

disturbance, difficulty in concentration, accentuation of pain, psychomotor slowing, sexual dysfunction, and constriction of interest by reason of . . . stress induced depression" and he remains totally disabled through 16 September 1983 when he was last examined by Dr. Branham.

The first question for decision is whether there is evidence in the record to support Finding No. 8, as a majority of the Court of Appeals concluded.

On appeals from the Industrial Commission, the Commission's findings of fact must be sustained if there is competent evidence in the record to support them. *Lawrence v. Hatch Mill*, 265 N.C. 329, 144 S.E. 2d 3 (1965). This is so even if there is evidence which would support a contrary finding, because "courts are not at liberty to reweigh the evidence and to set aside the findings of the Commission, simply because other inferences could have been drawn and different conclusions might have been reached." *Rewis v. Insurance Co.*, 226 N.C. 325, 330, 38 S.E. 2d 97, 100 (1946).

Dr. Branham testified:

I saw Mr. Hill because of weakness in his legs, pain in his back, which had been present since an injury at work. Subsequent to the injury, the weakness and the pain persisted which resulted in bringing about some symptoms of a disease which we call depression. These symptoms as I saw in Mr. Hill were represented by dysphoria or depression, difficulty in sleep pattern, trouble in concentration, accentuation of the pain already being experienced, psychomotor slowing, constriction of interest in general in his usual way of going about conducting his life, which had been seriously altered in so much as he was unable to function in an employment situation.

Dr. Branham testified unequivocally, "I don't feel Mr. Hill is in a situation in which he can work. That has been borne out by the criteria for the social security disability people who have very definite criteria for inability to work because of psychiatric problems." When asked whether this incapacity was "related to [Hill's] physical or to psychiatric problems that you are treating him for," Dr. Branham replied:

It's probably a combination of both, but it's more from my standpoint, I see it as being more from the physical limitation than from the psychiatric limitation. Mr. Hill has a great deal of difficulty in seeing his wife going to work every morning and he being the man of the household not being able to hold down a job and being at home. . . .

. . . .

Unless Mr. Hill can get some relief or some arrest or improvement from his physical situation, I think he's going to maintain to have a chronic state of depression, medications notwithstanding.

Earlier Dr. Branham had identified depression as a "stress related disorder."

Defendants contend that Dr. Branham's testimony can only be taken to mean first, that Hill's depression was caused not by his physical injuries but by his inability to work and second, Hill's incapacity to work was due not to his depression but to his physical injuries for which he had already been compensated. Defendants argue, therefore, that Dr. Branham's testimony does not support the Commission's Finding No. 8 that Hill's work-related physical injuries caused his depression and that his depression caused his incapacity for work.

We disagree. Although Dr. Branham's testimony is not rendered with as much precision and clarity as might be desirable, it is for the trier of fact, and not an appellate court, to resolve any ambiguities and inconsistencies in it. Dr. Branham's testimony, when viewed as a whole, forms a sufficient evidentiary basis for the Commission to find that Hill's depression was caused by his physical injuries and the depression in turn caused him to be incapable of working. This is so even if a contrary finding might also have been available to the Commission.

Dr. Branham testified: "Subsequent to the [work-related] injury, the weakness and pain persisted which resulted in bringing about some symptoms of a disease which we call depression." And, further, "[u]nless Mr. Hill can get . . . relief . . . from his physical situation, I think he's going to . . . have a chronic state of depression, medications notwithstanding." Clearly this testimony is sufficient to support the Commission's finding that Hill's

depression was caused by his physical, work-related injuries. Dr. Branham's testimony concerning Hill's inability "to function in an employment situation" is sufficient to support a finding that this inability was due to Hill's depression. The Commission was at least free to make this finding even if other findings might have been available to it.

Dr. Branham's testimony that Hill's inability to work was due "probably [to] a combination of both" his physical and his psychiatric limitations and "more from the physical than from the psychiatric limitation" can be taken to mean, when considered in context, that the genesis of Hill's problems was physical injury. This testimony, when considered with all else the psychiatrist said, did not preclude the Commission from finding Hill's incapacity for work to be causally related to his depression.

We are satisfied that the Commission's crucial Finding No. 8 is supported by the evidence; therefore, it must be sustained on appeal.

## III.

[2] Defendants next contend that because the Commission made a scheduled award under N.C.G.S. § 97-31(15) for Hill's 20 percent loss of use of his legs, it is precluded as a matter of law from subsequently awarding compensation for total incapacity for work under N.C.G.S. § 97-29. The question is whether an employee may be compensated for both a scheduled compensable injury under N.C.G.S. § 97-31 and total incapacity for work under N.C.G.S. § 97-29 when the total incapacity is caused by a psychiatric disorder brought on by the scheduled injury. We conclude the answer is yes.

*Davis v. Edgecomb Metals Company*, 63 N.C. App. 48, 303 S.E. 2d 612 (1983), answered this precise issue favorably to the employee in a thoroughly considered and well-researched opinion by Judge, now Justice, Whichard. There, as here, the Commission awarded the employee compensation under the statutory schedule, N.C.G.S. § 97-31(15), for an injury to his leg. When the leg injury subsequently resulted in a "post traumatic neurosis with a depressive reaction" which rendered the employee totally incapacitated for work, the Commission awarded compensation under N.C.G.S. § 97-29 for total incapacity. The Court of Appeals, rely-

ing on its own precedents, cases from other jurisdictions, and A. Larson, *Workmen's Compensation Law*, and noting "[d]efendants cite no authority contrary," *Davis v. Edgecomb Metals Company*, 63 N.C. App. at 57, 303 S.E. 2d at 617, affirmed both awards. The Court of Appeals quoted with approval from 1B A. Larson, *Workmen's Compensation Law* § 42.22:

> [W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic. psychotic, depressive, or hysterical symptom, functional overlay, or personality disorder, have accepted this rule. . . .
>
> There is almost no limit to the variety of disabling 'psychic' conditions that have already been recognized as legitimately compensable. . . .
>
> When the physical injury precipitating the neurosis is itself a scheduled injury, no special problems arise, since the case falls easily within the familiar rule that the schedule is not exclusive when the effects overflow beyond the scheduled member. . . .

One of the cases relied on in *Davis* is *Fayne v. Fieldcrest Mills, Inc.*, 54 N.C. App. 144, 282 S.E. 2d 539 (1981), *disc. review denied*, 304 N.C. 725, 288 S.E. 2d 380 (1982). In *Fayne* (as the record makes clear) the Industrial Commission awarded compensation under the statutory schedule for a work-related back injury. The Commission also, after finding on supporting evidence that the employee suffered from a totally disabling emotional condition, "directly related to and . . . caused by the back injury," awarded compensation under N.C.G.S. § 97-29 for total disability. The Court of Appeals, in an opinion by Judge, now Justice, Webb, affirmed.

*Davis* and *Fayne* were correctly decided and fully support the conclusion we reach on the question presented.

Defendants argue that since the scheduled injury statute, N.C.G.S. § 97-31, provides that compensation awarded thereunder "shall be in lieu of all other compensation . . .," the Court of Ap-

peals erred in affirming the Commission's award under both this statute and N.C.G.S. § 97-29. As this Court has made clear in several cases the "in lieu of" provisions of the scheduled injury statute apply only when *all* the employee's injuries fall within those set out in the schedule. *Fleming v. K-Mart Corp.*, 312 N.C. 538, 324 S.E. 2d 214 (1985); *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978). Indeed in *Little* the Court noted that an employee could be entitled to compensation "under G.S. 97-31 for such . . . injuries as are listed in that section, and to an additional award under G.S. 97-30 [the partial incapacity statute] for the impairment of wage earning capacity which is caused by any injuries *not listed* in the schedule in G.S. 97-31." *Id.* at 533, 246 S.E. 2d at 747. Even if all injuries are covered under the scheduled injury section an employee may nevertheless elect to claim under N.C.G.S. § 97-29 if this section is more favorable; but he may not recover under both sections. *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 348 S.E. 2d 336 (1986).

Here all of Hill's injuries were not covered under the statutory schedule. Hence this statute's "in lieu of" provision is no bar to Hill's recovery under both the schedule and N.C.G.S. § 97-29.

[3] Finally defendants argue that since the Commission did not find that Hill's capacity to work had changed since he reached "maximum medical improvement" on 1 November 1980, the Commission improperly made an award for total incapacity to begin two years later on 8 November 1982. Defendants argue:

> Either the claimant had reached maximum medical improvement on November 1, 1980, or he had not reached maximum medical improvement as of that date. If the claimant had fully healed as of November 1, 1980, no award of benefits for total disability should have been made after that date, in the absence of a finding that the claimant's ability to work and earn wages changed *after* he reached maximum medical improvement. . . . If, on the other hand, the claimant had not yet reached maximum medical improvement, he was not entitled to an award of benefits for permanent partial disability. N.C. Gen. Stat. § 97-31.

This argument seems to arise from a misunderstanding of the Commission's order. The Commission did not find that Hill had

reached overall maximum medical improvement on 1 November 1980. It found, rather, that he had reached "maximum medical improvement *physically*" by that date. (Emphasis supplied.) The Commission then concluded that Hill, having "reached maximum physical medical improvement" on 1 November 1980, was entitled to payment under the statutory schedule for the physical injuries to his legs. Neither did the Commission make an award under N.C.G.S. § 97-31 for "permanent partial disability." The Commission made an award under the schedule for the partial loss of use of Hill's legs without regard to how this loss affected his capacity to work.

The Commission also found that Hill's stress-related depression subsequently developed and rendered him "at least by 8 November 1982 totally disabled." It then concluded he was entitled to compensation for "stress induced depression which rendered him totally disabled" from 8 November 1982 "for so long as he remains so disabled." The only award made which was based on Hill's incapacity for work, other than that for temporary incapacity in 1979 and 1980, was the award for his stress induced depression.

The Commission's findings support its conclusions which, in turn, support its award. There are no double payments for the same injury and no inconsistencies in its order. We find no merit in defendants' arguments to the contrary.

## IV.

[4] The Commission's award was made on 23 October 1984. On 14 October 1985, while the case was pending in the Court of Appeals, defendants moved in that court for a new hearing before the Commission under Civil Procedure Rule 60(b)(2) and (6). Rule 60(b) provides for relief from final judgments, orders, or proceedings upon grounds listed in several subsections of the rule. Subsection (2) is for "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Subsection (6) is for "[a]ny other reason justifying relief from the operation of the judgment."

Affidavits in support of the motion tended to show that between 8 March 1985 and 6 May 1985 investigators observed Hill engaging in various physical activities such as carrying grocery

Hill v. Hanes Corp.

bags, mowing the lawn with a tractor, working on his automobile, and cutting lumber with a saw. The affidavits indicate that Hill had been observed in certain other activities which were, according to the affidavits, not consistent with some of the testimony offered at the hearing and that these other activities had been going on continuously since the late 1970's. The motion states that the Commission's award is "inconsistent with newly discovered evidence which by due diligence could not have been discovered in time to move for rehearing prior to filing the present appeal."

It is clear from defendants' motion that they contemplated the Court of Appeals would not rule on it but would remand it for consideration by the Industrial Commission in the event the Court of Appeals ruled adversely to defendants on the merits of their appeal. The motion states "defendants respectfully request that the North Carolina Court of Appeals decide the merits of the Appeal filed by defendants prior to remanding this case to the Industrial Commission for consideration of this Motion." The motion states further that a reversal by the Court of Appeals "would eliminate the need for consideration of the present Motion by the Industrial Commission."

Nevertheless a majority of the Court of Appeals decided to address the merits of defendants' Rule 60(b) motion and denied it on the grounds: (1) the evidence referred to in the affidavits could have with due diligence been discovered in time to ask the Industrial Commission for a new hearing; (2) there is nothing in the motion or affidavits justifying relief under subsection (6); and (3) the proper procedure for ending, diminishing or increasing a compensation award is a motion filed under N.C.G.S. § 97-47. The last cited statute provides:

Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded . . .

Dissenting from this aspect of the majority's opinion, Chief Judge Hedrick wrote:

[T]he majority has mishandled the Rule 60(b)(2) and (6) motion for 'relief from judgment.' This motion was properly filed in

this Court. *Swygert v. Swygert*, 46 N.C. App. 173, 264 S.E. 2d 902 (1980). With respect to hearing the Rule 60(b) motion in *Swygert*, Judge Frank Parker stated that 'the determination of plaintiff's motion will require the resolution of controverted questions of fact which the trial court is in a far better position to pass upon than is this Court. . . .' *Id.* at 181, 264 S.E. 2d at 907 (1980). I know no reason why we should treat a Rule 60(b) motion filed in this Court in an appeal from the Industrial Commission differently than we treat any other Rule 60(b) motion.

The request in the defendant's Rule 60(b) motion that we 'decide the merits of the appeal filed by the defendants prior to remanding this case to the Industrial Commission for consideration of this motion' effectively withdrew the motion. Thus we need not take action on the motion.

Furthermore, a motion made under G.S. 97-47 is certainly not the same as a motion under Rule 60. A motion by defendant before the Industrial Commission pursuant to G.S. 97-47 would not afford the same relief as a motion filed pursuant to Rule 60(b)(2) and (6). When this case is finally determined on appeal, the defendant can file its Rule 60(b) motions with the Industrial Commission.

On this aspect of the case we agree with Chief Judge Hedrick. It was error for the reasons he stated for the Court of Appeals to rule on defendants' Rule 60(b) motion. After deciding the merits of the case adversely to defendants, the Court of Appeals should have remanded this motion for initial determination by the Industrial Commission.

## V.

The result is this: On the merits of the appeal the decision of the Court of Appeals is affirmed for the reasons we have given. On defendants' Rule 60(b) motion the decision of the Court of Appeals denying the motion is vacated. The motion is remanded to the Court of Appeals with directions that it remand the motion to the Industrial Commission for initial determination.

Affirmed.

Denial of Rule 60(b) motion vacated and motion remanded.

Justice MITCHELL did not participate in the consideration or decision of this case.