The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with a modification concerning an independent medical examination.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Plaintiff's average weekly wage was $520.00, which yields a compensation rate of $346.67 per week.
4. Plaintiff suffered an injury by accident on August 14, 1989, resulting in an injury to her right arm and right wrist.
5. The defendant-employer admitted liability and the parties entered into both a Form 21 and Form 26 agreement.
6. The issues to be determined by the Commission are (1) should the Form 26 be set aside for G.S. 97-30 benefits, and (2) whether plaintiff is entitled to additional medical treatment.
Based upon all of the competent evidence in the record, the undersigned Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer on August 14, 1989 as an assembler at defendant's truck manufacturing plant in Mount Holly. She worked in the final cab department installing left-hand doors. This work required plaintiff to use pneumatic impact wrenches.
2. On or about August 14, 1989, plaintiff began to experience pain and discomfort in both hands, with her primary symptoms being in the right hand. She was subsequently diagnosed with right carpal tunnel syndrome. Plaintiffs' claim for benefits under the Workers' Compensation Act was accepted by defendant on a Form 21 agreement approved by the Industrial Commission on January 8, 1990.
3. In December 1989, plaintiff underwent carpal tunnel release of the right hand. She returned to work at light duty approximately six (6) weeks later. She eventually returned to regular duty for a period of two (2) weeks, after which she resumed light duty. Plaintiff continued at light duty until May 31, 1991, when she took a leave of absence. Prior to leaving, plaintiff was given an opportunity to walk through defendant's plant to see if there was any job she could perform. The only job she identified was tool cribbing. There was no tool cribbing position available.
4. Bob Widener, the plant Safety Director, contacted plaintiff about returning to Dr. Kingery, her treating physician, for a disability rating. He informed plaintiff that she was entitled to compensation for any permanent partial disability she sustained. Plaintiff returned to Dr. Kingery and received a twenty (20) percent permanent partial disability rating to the right arm. Plaintiff had no further contact with Mr. Widener or anyone else at the Mount Holly plant after May 31, 1991.
5. After going out of work on leave of absence, all of plaintiff's contact with the employer was through the Portland office, where workers' compensation claims are processed. She was sent a "Supplemental Memorandum of Agreement as to Payment of Compensation" (Form 26) to compensate her for the permanent disability to her right arm. Plaintiff received the form and understood that she would be compensated for her permanent partial disability. She signed the Form 26 and mailed it back to Portland. Subsequent to mailing the form, plaintiff contacted the Portland office and spoke with Ms. Martin, the claims examiner handling her case. Plaintiff advised Ms. Martin that she was not sure what she wanted to do about the Form 26, and Ms. Martin agreed not to file the agreement with the Commission until plaintiff gave final instructions to do so. Ms. Martin encouraged the plaintiff to seek the advice of an attorney, which plaintiff did. The attorney advised plaintiff of her rights under the Act and told her the ultimate decision was up to her. After conferring with the attorney, plaintiff notified Ms. Martin to go ahead and file the Form 26 with the Industrial Commission. She was paid and accepted benefits payable under the agreement, which compensated her for a period of forty-eight (48) weeks. Plaintiff accepted benefits under G.S. 97-31.
6. Plaintiff returned to part-time work at a deli in February 1993. On March 5, 1993, she began full-time employment with Gerber Corporation, where she was working at the time of her hearing. At Gerber, plaintiff worked a production job folding and hanging baby clothes. She used her hands repetitively handling up to 1,200 garments in an eight (8) hour period, with a minimum production rate of 117 pieces per hour. At the time of the hearing, plaintiff was working fifty (50) hours per week. After leaving her employment in May 1991, plaintiff's right hand symptoms continued to worsen. While she was out of work, plaintiff continued performing her customary household duties and other hobbies.
7. Dr. Kingery first saw plaintiff on November 27, 1989, for evaluation of right hand symptoms. He diagnosed plaintiff's condition as carpal tunnel syndrome and performed a right carpal tunnel release in December 1989. In January 1990, plaintiff was permitted to return to light work. On July 11, 1990, she was approved for unrestricted work, and returned to work. However, she could not perform her regular work, so she was put back on light duty. When plaintiff was seen on January 15, 1991, she reported that she was working in the office. This work was consistent with the final restrictions assigned by Dr. Kingery, which included no use of pneumatic tools and no lifting greater than ten (10) pounds. On April 17, 1991, plaintiff was rated as having a twenty (20) percent permanent partial disability of the right arm. This rating was based on persistent pain in the shoulder and arm, and sensitivity to repetitive motion. Dr. Kingery could not relate plaintiff's arm and shoulder pain to her carpal tunnel syndrome. However, Dr. Hamaty diagnosed plaintiff as having post-carpal tunnel fibromyalgia with scapulohumeral myofascial pain. He further indicated that repetitive trauma and carpal tunnel surgery contributed to the development of fibromyalgia.
8. Plaintiff was not seen again until December 6, 1991. Her symptoms in December 1991 were more significant than in April. Dr. Kingery was not aware plaintiff had left her employment at Freightliner in May 1991. Dr. Kingery referred plaintiff to Dr. Demas, a neurologist, for further evaluation. Dr. Demas examined plaintiff on December 16, 1991. According to the history plaintiff gave Dr. Demas, her condition had worsened since October 1991.
9. Dr. Kingery did not see plaintiff from December 6, 1991 until January 20, 1993. On January 20, 1993, Dr. Kingery felt plaintiff's condition had worsened since her disability rating in April 1991. Since he had not seen plaintiff for thirteen months, Dr. Kingery could not say to a reasonable degree of medical certainty what caused her condition to worsen. Dr. Kingery was also questioned about plaintiff's employment as a production worker at Gerber, where she was required to repetitively fold and handle garments. Plaintiff began that job on March 5, 1993. Dr. Kingery testified that plaintiff's employment at Gerber augmented her condition to some degree, however slight. However, Dr. Hamaty related her condition to the original injury and surgery. He further recommended a comprehensive rehabilitation program. The object of such a program is to return the employee to work without the use of habituating medications. This is accomplished by encouraging the patient to become more active and reconditioning the patient for work. There is no way to know if such a program will be successful until it is completed. When questioned about her job at Gerber performing repetitive production labor, he conceded that was the type of employment he would have tried to prepare plaintiff for with the rehabilitation program. Dr. Hamaty acknowledged that work itself can be therapeutic. When asked to consider plaintiff's present employment and his recommendation of January 1992, Dr. Hamaty could not say whether a rehabilitation program was still indicated. His opinions about plaintiff's condition and treatment were based solely on what he knew on January 31, 1992.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
CONCLUSIONS OF LAW
1. Under the Act, an employee who has sustained a compensable injury to a scheduled member of the body under G.S. 97-31 may elect to receive compensation under G.S. 97-30 or G.S. 97-29 if he has reached maximum medical improvement and establishes that his earning capacity has been diminished or totally eliminated. Whitley v. Columbia Lumber Mfg. Co., 318 N.C. 89, 348 S.E.2d 336
(1986); Gupton v. Builders Transpt., 83 N.C. App. 1,348 S.E.2d 601 (1986), rev'd on other Grounds, 320 N.C. 38, 357 S.E.2d 674
(1987). The employee, however, cannot recover compensation for permanent partial disability under G.S. 97-31, and then claim benefits under G.S. 97-29 or G.S. 97-30. Ibid.; Hill v. Hanes Corn., 319 N.C. 167, 353 S.E.2d 392 (1987); Vernon v. Steven L. Mabe Bldrs., 110 N.C. App. 552, 430 S.E.2d 676 (1992).
2. An injured employee may make an election of benefits under the Act by executing a memorandum of agreement to pay compensation. G.S. 97-82. Such an agreement, once approved by the Commission, becomes an award of the Commission. Apple v. Guilford Counts, 321 N.C. 98, 361 S.E.2d 588 (1987). When an employee has made his election of benefits pursuant to a written agreement approved by the Commission, he is bound by his election unless: "it shall be made to appear to the satisfaction of the Commission that there has been an error due to fraud, misrepresentation, undue influence or mutual mistake." Pruitt v. Knight Publishing Co., 289 N.C. 254, 221 S.E.2d 355 (1976); G.S. 97-17. It is undisputed that the parties in this case entered into a Form 26 agreement, which was duly approved by the Industrial Commission on June 27, 1991. The evidence in the present case will not support a finding under any theory to set this judgment aside.
3. In December of 1991, Dr. Kingery found plaintiff's symptoms to be more significant than in April when he rated her and referred her to Dr. Demas, a neurologist. In January of 1993, Dr. Kingery felt that plaintiff's condition had worsened since his disability rating in April of 1991. Therefore, plaintiff has suffered a change of condition. G.S. 97-47.
4. Plaintiff is entitled to medical treatment for her carpal tunnel syndrome to her hands as necessary to effect a cure, give relief, or lessen disability. Hyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993). An employee claiming medical compensation also has the burden of proving that the requested treatment is for a condition causally related to a compensable injury. Duncan v. City of Charlotte, 234 N.C. 86, 66 S.E.2d 22
(1951). The employee may not rely upon mere speculation or innuendo to meet this burden. Ballenger v. Burris Industries,66 N.C. App. 556, 311 S.E.2d 881 (1984). Dr. Hamaty presented competent medical evidence that plaintiff's present condition is related to her occupational disease or carpal tunnel surgery. However, Dr. Kingery's opinion was to the contrary.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
AWARD
1. Defendant shall provide additional medical treatment as necessary to effect a cure and give relief to plaintiff's carpal tunnel condition. Plaintiff shall submit to an independent medical examiner jointly chosen by plaintiff and defendant for advice as to what treatment is needed. If plaintiff and defendant are unable to agree on an independent medical examiner they shall so notify the Commission and one will be selected for them. Defendant shall pay for the independent medical examination.
2. Plaintiff's motion to set aside the Form 26 agreement is hereby DENIED.
3. Defendant shall pay the costs due this Commission.
 S/ ______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE M. BALLANCE COMMISSIONER
S/ _____________________ COY M. VANCE COMMISSIONER