Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
 MOTION TO DISMISS
Defendants 23 August 1999 motion to dismiss plaintiffs appeal is, in the discretion of the Commission, denied.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Liberty Mutual Casualty Company is the carrier on the risk.
4. Plaintiffs average weekly wage at all relevant times was $547.58, yielding a compensation rate of $365.07.
5. Plaintiff sustained an injury by accident to his back arising out of and in the course of his business with defendant-employer on 8 April 1996.
6. The last date plaintiff worked for defendant-employer was 10 January 1997.
7. Judicial notice was taken of the Forms 21, 26 and 28 in the Industrial Commission file.
8. The parties stipulated to the following records:
a. Medical records of William Morrison
b. Defendants Answers to Plaintiffs First Set of Interrogatories and Request for Production of Documents
9. The issues to be determined are:
a. Is plaintiff permanently disabled as a result of his injury by accident?
b. Was plaintiffs lay-off from working a result of his injury?
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff was born 26 April 1942 and at the time of the hearing was 56 years old. He is illiterate with little formal education. He was employed 29 years with Metromont and its predecessor companies as a pre-stress structural utilities person. Most recently, plaintiff was an overhead crane operator, required to work nine to ten hours per day. His job duty was to hook up heavy cables to large pre-stressed concrete blocks for moval throughout the construction site. He was required to remain on his feet for his entire shift.
2. Defendant-employer is the manufacturer of architectural pre-stressed concrete.
3. Metromont Materials employed plaintiff on 31 October 1995.
4. On 15 December 1995, while working as an overhead crane operator, plaintiff bumped and injured a co-worker with a dumpster. This incident resulted in a safety violation with a warning notice.
5. On 8 April 1996, plaintiff sustained a compensable injury to his back, whereby he treated with Dr. Todd Chapman of Miller Orthopaedic Clinic. Dr. Chapman initially diagnosed a lumbar strain. He later ordered a CT scan. The CT scan revealed plaintiff had a recurrent HNP, right at L5-S1 and a lateral disc at L4-5.
6. The parties entered into a Form 21 Agreement on 24 April 1996, approved by the Commission on 3 July 1996.
7. On 2 July 1996, Dr. Chapman permitted plaintiff to return to work with restrictions of no lifting greater than twenty-five pounds and no repetitive twisting, bending, pushing or pulling. Dr. Chapman stated plaintiff could work as a crane operator four hours per day for two weeks, then six hours per day for two weeks, then eight hours per day.
8. Subsequent to Dr. Chapmans release of plaintiff to return to work, he returned to work with defendant-employer at the same or greater average weekly wage as prior to the injury as a crane operator.
9. On 3 September 1996, Dr. Chapman limited plaintiff to eight hours per day, because plaintiff had complained that working over eight hours per day caused him to have problems with his legs.
10. On 10 September 1996, while operating an overhead crane, plaintiff struck another employee with a concrete bucket hooked from the crane. As a result of this accident, deemed a safety violation by defendant-employer, plaintiff was given a second warning notice, suspended for three days and permanently removed from crane duties.
11. After the September safety violation, plaintiff began working in a maintenance capacity in the pre-stress area. His duties included operation of a forklift
12. On 1 October 1996, EMG/NCS of plaintiffs lower extremities revealed evidence of bilateral S-1 radiculopathy and evidence of peripheral polyneuropathy. However, plaintiff was not taken out of work.
13. On 7 October 1996, plaintiff described the new position to Dr. Chapman, and indicated that he could work nine hours per day. Dr. Chapman increased plaintiffs time to nine hours per day.
14. On 18 November 1996, plaintiff told Dr. Chapman that he was working 43-45 hours per week within his restrictions as previously described.
15. On 26 November 1996, plaintiff executed a Form 26 Supplemental Agreement, approved by the North Carolina Industrial Commission on 27 May 1997, pursuant to which he elected to receive payment of compensation for the 5% permanent partial impairment of his back pursuant to G.S. 97-31.
16. In December 1996, plaintiff was operating a forklift at work, transporting a large, expensive heating unit. The unit fell off the forklift and plaintiff drove the forklift over the unit, destroying it.
17. As a result of the December incident, plaintiff was transferred to the fabrication bar division area in the plant, which required plaintiff to bend and lift. He was also required to lift in excess of twenty-five pounds, all in violation of his work restrictions.
18. On 10 January 1997, when the architectural plant of Metromont Materials experienced a decrease in work, plaintiff was laid off. Plaintiff was ready and able to work within his medical restrictions.
19. Plaintiff received unemployment benefits as a result of his lay-off.
20. From 10 January 1997 to the date of the hearing before the deputy commissioner, defendant-employer hired sixty-eight persons for various positions but did not reinstate plaintiff.
21. Plaintiff returned to Miller Orthopaedic Clinic in March 1997, at which time repeat studies were recommended. On 5 April 1997, repeat nerve conduction values were similar to the findings in October 1996. No further treatment has been recommended.
22. Plaintiff was released to work after his compensable injury of 8 April 1996. He was physically able to return to the job he had prior to his injury and to earn the same or greater wages. Plaintiff was reassigned from the crane operator position and from the forklift job because of safety violations and not because of his injury.
22. Plaintiff is not permanently and totally disabled. Plaintiff was not involved in a trial return to work when he was laid off.
23. Plaintiff had not experienced a change in his condition at the date of the hearing. No medical evidence was offered by plaintiff to support a change of condition.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer on 8 April 1996. G.S. 97-2(6).
2. By virtue of the approved Form 21 Agreement, plaintiff had a presumption of total disability until he returned to work on 2 July 1996. G.S. 97-82.
3. The Form 26 Agreement for payment of a 5% permanent partial impairment of the spine was an award of the Commission. G.S.97-82.
4. Trial return to work provisions do not apply to cases wherein an employee has accepted compensation for permanent partial disability pursuant to G.S. 97-31, unless the trial return to work follows reinstatement of compensation for total disability under G.S. 97-29; Workers Compensation Rule 404A(7)(d).
5. Plaintiff has failed to show a change of condition. G.S. 97-47.
6. Having elected benefits under G.S. 97-31, plaintiff cannot now recover compensation for permanent total disability absent a change of condition. G.S. 97-31; G.S. 97-47; Hill v. Hanes Corp.,319 N.C. 167, 353 S.E.2d 392 (1986).
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiffs claim for permanent total disability is hereby DENIED.
2. Defendants shall pay the costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER