Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Michigan Mutual Insurance Company is the carrier on risk.
4. Plaintiff's average weekly wage is $380.03, which yields a compensation rate of $253.37.
5. On August 14, 1999, plaintiff sustained injuries by accident arising out of and in the course of her employment with defendant-employer when a roving stick fell striking her on the right side of her face.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1. This documentation includes records from Johnson Neurological, Lexington Memorial Hospital, Terry V. Arnold, M.D., Frank Crowell, M.D., William L. Bell, M.D., Richard L. Rauck, M.D., Kathy J. Teasdall, M.D., John A. H. Porter, M.D., and James M. Walter, Jr., D.D.S.M.S. These records were supplemented by additional documentation from Terry V. Arnold, M.D.
7. The issues before the Commission are: (i) what disability, if any, was sustained by plaintiff; and (ii) what compensation, if any, is due plaintiff?
 ***********
The Full Commission adopts with some modifications the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one years old. Plaintiff has a seventh grade education.
2. On August 14, 1999, plaintiff was employed by defendant-employer at the Hill Spinning facility in Davidson County. Plaintiff had worked for defendant-employer four years prior to August 14, 1999. Plaintiff had performed similar work in other textile mills for over thirty years.
3. On August 14, 1999, a bobbin or "roving stick" fell and struck plaintiff on the right upper forehead and the orbit of her right eye. Plaintiff felt immediate pain and called for her supervisor and assistance. Plaintiff was disoriented and her head was bleeding as result of the bobbin striking her. Plaintiff's vision was blurry and she was unable to clearly read numbers on the telephone. Plaintiff's supervisor dialed plaintiff's home telephone number so that plaintiff could call her husband.
4. Plaintiff's husband transported plaintiff from her place of employment to Lexington Memorial Hospital. X-rays of the orbits and facial bones indicated no fracture and plaintiff was released with a prescription for pain and head injury instructions.
5. Plaintiff continued to suffer facial pain and nausea and was unable to work on Monday, August 16, 1999. On Tuesday, August 17, 1999, Mark Leonard, plant manager, sent plaintiff to the Brigman Clinic. Plaintiff was not treated at the Brigman Clinic, but referred to Lexington Memorial Hospital for a head CT scan which showed no abnormalities.
6. Plaintiff continued to be out of work during the week of August 16, 1999 due to severe headaches, nausea, dizziness, right ear pain and neck pain.
7. Plaintiff returned to work on Monday, August 23, 1999. Plaintiff indicated to her plant manager that she still felt very ill in spite of returning to work.
8. On August 24, 1999, plaintiff was seen in the office of her primary care physician, Terry V. Arnold, M.D. Plaintiff related the history of her accident to Margie Trent, Physician Assistant to Dr. Arnold. As result of this examination, plaintiff was diagnosed with mild concussion and blurred vision. Plaintiff was referred to a neurologist and ophthalmologist and then to return to see Dr. Arnold.
9. After this referral, plaintiff was seen by several physicians who were individuals that she chose without the assistance of the workers' compensation carrier's medical management.
10. On October 13, 1999, plaintiff was seen by Frank Crowell, M.D., as a result of her continued post-traumatic blurred vision, headaches, and head pressure. Dr. Crowell ordered an EEG and a visual evoked response test. The results of both tests were within normal limits. Dr. Crowell indicated plaintiff was likely suffering from "post-concussive syndrome" and should improve with conservative measurements.
11. During the time plaintiff was seeking medical treatment from late August 1999 until October 1999, plaintiff continued to work. However, plaintiff required the assistance of others to perform her job duties as the result of increasingly painful symptoms.
12. Plaintiff did not work for two weeks due to lay-offs and on a number of days called in sick due to head and right ear pain.
13. In November 1999, plaintiff began experiencing severe migraines and severe pain in her right ear. Plaintiff was no longer able to tolerate working at the plant as result of an increased intolerance to noise.
14. Plaintiff indicated that the last day she worked was Saturday, November 13, 1999. Plaintiff stated that on Monday, November 15, 1999, she told Mr. Leonard that she was not able to return to work because of head pain.
15. Plaintiff testified she was sick on November 16, 1999 and November 17, 1999. Plaintiff indicated that she was advised by Mr. Leonard that she could not return to work until she was 100% better.
16. Mark Leonard, plant manager and George Godwin, plaintiff's supervisor, testified that plaintiff did return to work on November 15 and found that a co-worker named Thelma had sustained a work-related injury. As result of receiving this information, Mr. Leonard and Mr. Godwin stated that plaintiff fell apart, became sick and went home.
17. The Summary of Employee Absence Information prepared by Mr. Godwin relates this incident.
18. Plaintiff's time cards indicate plaintiff did not work at all during the week of November 15, 1999.
19. The Summary of Employee Absence Information contained inconsistencies and does not appear to have been made in chronological order.
20. The incident involving injury to a co-worker appears to have occurred several weeks prior to plaintiff's injury by accident and plaintiff was informed of this accident prior to November 15, 1999.
21. Plaintiff has been seen on at least fifteen occasions by a chiropractor, Dr. Schick, who treated her neck along with TMJ symptoms.
22. Dr. Arnold, plaintiff's primary physician, referred plaintiff to Piedmont Anesthesia and Pain Consultants. Plaintiff was treated by Richard L. Rauck, M.D., at Piedmont Anesthesia and Pain Consultants. Dr. Rauck diagnosed post-traumatic atypical facial pain, myofascial neck pain and migraines and instituted a regimen of medication and physical therapy to help with the TMJ dysfunction and neck pain.
23. Plaintiff was also treated by William L. Bell, M.D., a neurologist at Wake Forest University Baptist Medical Center. Dr. Bell diagnosed post-traumatic migraines that were poorly controlled and related the symptoms of blurred vision, lightheadedness, and nausea to the migraine. Dr. Bell also suggested the symptoms might be related to associated anxiety.
24. Dr. Arnold referred plaintiff to Kathy Jackson Teasdall, M.D., an ear-nose-throat specialist in Winston Salem, North Carolina. Dr. Teasdall evaluated plaintiff and suggested plaintiff's symptoms were consistent with TMJ syndrome and referred plaintiff to James M. Walter, an oral surgeon.
25. James M. Walter, Jr., D.D.S., M.S., determined plaintiff's complaints were headaches secondary to situational stress and work related cranial injury. Dr. Walter did not believe the TMJ problem was contributing to plaintiff's hyperacuity and ultimate headache progression and referred plaintiff back to Dr. Teasdall.
26. Plaintiff has also been seen by John A. H. Porter, M.D., a neurologist. Dr. Porter determined plaintiff has post-traumatic head pain syndrome with apparent precipitation of post-traumatic migraine, associated with localized irritability in the supraorbital nerve.
27. At the time of the hearing before the Deputy Commissioner, plaintiff continued to treat with Dr. Porter.
28. Plaintiff has not worked for anyone since November 15, 1999 other than assisting with childcare for her daughter. Plaintiff received $80.00 per week for several weeks during the summer of 2000 for this childcare. Plaintiff continued to experience pain and have migraines during this time. This childcare was provided for a very brief time. Plaintiff was forced to end her assistance for her grandchildren because of problems relating to her August 14, 1999 injury by accident.
29. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment while working for defendant-employer on August 14, 1999.
30. Plaintiff has been incapable of working for this or any other employer since November 15, 1999 as result of the work related injuries and resulting pain from her compensable injury by accident on August 14, 1999.
31. As indicated in the medical records, plaintiff suffers from anxiety and other psychological problems as a result of her injury by accident.
32. Defendants have not defended this action without reasonable grounds.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 14, 1999, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen.Stat. § 97-2(6).
2. As result of her compensable injury by accident on August 14, 1999, plaintiff is entitled to total disability compensation at the rate of $253.37 per week beginning November 15, 1999 until further order of the Industrial Commission. Defendants are entitled to a deduction for childcare wages plaintiff received during Summer 2000. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive medical treatment incurred or to be incurred as the result of her compensable injuries by accident on August 14, 1999. N.C. Gen. Stat. § 97-25.
4. Plaintiff is entitled to receive treatment for any psychological injuries that are a result of her compensable injury by accident on August 14, 1999. N.C. Gen. Stat. § 97-25; Hill v. Hanes Corp.,319 N.C. 167, 353 S.E.2d 392(1987); Morrison v. Burlington Industries,304 N.C. 1, 282 S.E.2d 458 (1981).
5. Defendants have not defended this action without merit. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For her total disability and subject to a deduction for childcare wages earned, plaintiff is entitled to total disability compensation at the rate of $253.37 per week beginning November 15, 1999 and continuing until further order of the Industrial Commission. Said amount which has accrued to date shall be paid in a lump sum, subject to an attorney's fee approved in Paragraph 3.
2. Defendants shall pay all medical expenses, including psychological treatment, resulting from plaintiff's compensable injury by accident on August 14, 1999.
3. A reasonable attorney's fee of twenty-five percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth compensation check.
4. Defendants shall pay the costs.
This the ___ day of January 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/mhb