***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Dennis Associates is the carrier on risk.
4. Plaintiff suffered compensable injuries to his right wrist, back and head on August 28, 1995. Defendants filed a Form 60 and accepted plaintiff's right wrist injury and paid total disability compensation pursuant to this filing.
5. Plaintiff's average weekly wage is $440.00, yielding a compensation rate of $293.35.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
7. The affidavit of Elaine Sardi was stipulated into evidence as Stipulated Exhibit 2.
8. Industrial Commission filings in this case were stipulated into evidence as Stipulated Exhibit 3.
9. The issues to be determined are: (i) what are the compensable consequences of plaintiff's injury by accident on August 28, 1995; (ii) what medical treatment, if any, is appropriate for plaintiff at this time; (iii) whether penalties are appropriate for failure to pay compensation; (iv) whether plaintiff is entitled to permanent partial disability compensation for his right wrist; and (v) whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 *********** EVIDENTIARY RULING
Plaintiff's motion to admit the statement by Teresa Sisco into evidence in this matter is DENIED.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was employed as a dry wall technician for defendant-employer. On August 28, 1995, plaintiff fell from a platform on the job. Plaintiff sustained multiple injuries including injuries to his right wrist, head and back.
2. Defendant-employer accepted the accident as compensable and filed an Industrial Commission Form 60 acknowledging plaintiff's right wrist fracture and indicating an average weekly wage of $440.00.
3. Plaintiff was initially treated in the emergency department at Duke University Medical Center.
4. Dennis A. Turner, M.D. treated plaintiff and reported that plaintiff fell and lost consciousness at the scene. Plaintiff regained consciousness in route to the hospital and was alert and moving all his extremities upon arrival. Plaintiff had two lacerations on his head, one on his forehead and one on the vertex of the scalp. Both lacerations were sutured in the emergency room.
5. Plaintiff was admitted to the Neurosurgery Service and was observed for twenty-three hours. After having an intact neurological examination for twenty-three hours, plaintiff was discharged and sent home.
6. Duke University Medical Center's records indicate plaintiff's skull was intact and with no depression or step-off.
7. On September 1, 1995, plaintiff was seen at Duke University Orthopedic Clinic by Dr. Stephen N. Lang. Plaintiff indicated to Dr. Lang that he hit his head on something when he fell and cut his head. Dr. Lang gave plaintiff a fiberglass cast for his right wrist and indicated it would be possible for him to return to work on September 11, 1995 if he was doing satisfactorily and if limited work was available.
8. Plaintiff saw Dr. Lang again on September 8, 1995. Dr. Lang instructed plaintiff to continue using the cast for another ten days.
9. On September 21, 1995, Dr. Lang again saw plaintiff and indicated plaintiff could plan to return to work on September 25, 1995. Plaintiff was to avoid excessive lifting.
10. Plaintiff returned to work on September 28, 1995 as a helper for defendant-employer, as indicated in a Form 28 filed with the North Carolina Industrial Commission.
11. Plaintiff was paid temporary total disability compensation for the period of August 29, 1995 through September 27, 1995.
12. After being released to return to work, plaintiff continued to work for defendant-employer as a helper at his pre-injury salary until he was laid off around Thanksgiving 1995. Plaintiff has not been paid any temporary total disability compensation since September 27, 1995.
13. Plaintiff continued to see Dr. Lang for follow-up treatment for his wrist. On November 21, 1995, plaintiff contacted Dr. Lang complaining of persistent headaches and loss of recall since his accident. Dr. Lang referred plaintiff for a neurological consultation.
14. Dr. Lang indicated in his January 9, 1996 record he did not think plaintiff needed any further treatment for his wrist. Plaintiff was released from Dr. Lang's care and assigned a five percent permanent partial disability rating to his hand.
15. Plaintiff saw Dr. Michael H. Bowman for a neurological evaluation on January 31, 1996. Dr. Bowman's records indicate he felt that plaintiff probably suffered from post-concussive syndrome. Dr. Bowman stated that common problems associated with post-concussive syndrome are headaches, dizziness, memory loss and depression. He further stated that plaintiff had no neurological deficits, which is usually the case in patients who have sustained a concussion.
16. Plaintiff returned to Dr. Bowman on July 1, 1996 complaining of increased headaches, lightheadedness and dizziness. Dr. Bowman indicated that plaintiff was suffering from affective disorder which may be an extended post concussive syndrome. Dr. Bowman referred plaintiff for formal neuropsychological testing in order to differentiate between cognitive difficulties related to injury and those related to depression.
17. Plaintiff did not see Dr. Bowman again until February 24, 1997. During this time, plaintiff did not undergo any neuropsychological testing as requested by Dr. Bowman. At this visit, plaintiff complained of continuing headaches, lightheadedness and trouble with concentration. Dr. Bowman again stated that he felt that plaintiff was depressed.
18. On August 28, 1997, plaintiff underwent neuropsychological testing with Dr. John F. Warren, III, a licensed psychologist. Dr. Warren found deficits in plaintiff's attention and executive functioning. He stated that these deficits were due to damage to plaintiff's frontal lobe which was likely sustained in plaintiff's fall at work. Dr. Warren also found that plaintiff was experiencing a major depressive episode. He stated that plaintiff's depressed mood further impaired plaintiff's limited attention and executive abilities. Dr. Warren recommended that plaintiff join a head injury support group to focus on self-esteem issues and coping with cognitive difficulties.
19. On October 31, 1997, plaintiff was seen by Dr. Margaret Dorfman, a psychiatrist, on referral from Dr. Bowman. Dr. Dorfman treated plaintiff through August 2000 at which time defendants terminated the treatment. Dr. Dorfman testified that her initial diagnosis of plaintiff was post-concussive syndrome and a first episode of depression. Over the course of treatment, this diagnosis evolved into a diagnosis of Cognitive Disorder NOS, a residual cognitive impairment plus head trauma. Dr. Dorfman testified that she certainly believed that the cognitive disorder resulted from plaintiff's fall at work and that as a result plaintiff is not able to function in the way he had previously. Dr. Dorfman stated that this inability to function normally led to plaintiff's depression.
20. Dr. Dorfman further testified and the Commission so finds that the results of plaintiff's head injury are permanent and that it is highly unlikely that he will be able to maintain or even obtain employment in the regular work force. Dr. Dorfman stated that any job with even the most limited amount of stress would cause an elevation of plaintiff's psychosis and his symptoms of memory loss, loss in concentration, and difficulty organizing his thoughts would be exacerbated.
21. Defendants sent plaintiff for an independent psychological evaluation with Dr. Cynthia D'Amico, a psychologist. Dr. D'Amico conducted a half-day examination on February 2, 2000. Dr. D'Amico stated that plaintiff most likely suffered from postconcussive disorder but that she believed plaintiff was at maximum medical improvement for any cognitive deficits which might have been related to the head injury. Dr. D'Amico attributed plaintiff's psychosis to his living situation and generalized delusional thinking rather than his head injury.
22. The Commission gives more weight to the opinions expressed by Dr. Dorfman, a psychiatrist, than to those of Dr. D'Amico, a psychologist. Dr. Dorfman treated plaintiff over a period of three years as opposed to a one-time medical examination by Dr. D'Amico.
23. Plaintiff's testimony concerning his work history is very vague and unclear. At the time of the hearing before the Deputy Commissioner, plaintiff stated that he remained unable to advance beyond a position as "helper" to his previous position as a foreman and installer of dry wall. He stated that he was required to relearn basic carpentry skills he had previously mastered in his twenty-five years in dry-wall installation. Prior to plaintiff's injury by accident, he held a supervisory position as a foreman, but following the accident, plaintiff has experienced difficulty functioning at a much lower level job as a helper. Plaintiff testified to having a poor memory of his job history, but that he had worked sporadically since his injuries at significantly lower wages than he earned prior to his compensable injury.
24. Although plaintiff's work history is unclear, it appears from Dr. Dorfman's records that plaintiff last worked in February 1999. Apparently, a coworker did not pick plaintiff up for work one day and therefore plaintiff assumed that he was laid off and did not go to work. Dr. Dorfman attributed plaintiff's actions to a delusional misinterpretation.
25. Plaintiff's delusional thinking was also apparent in his belief that he was under surveillance by the insurance carrier and that an agent or representative of the carrier broke into his home one night and attempted to kill him.
26. Plaintiff has attempted retraining through classes at Durham Technical Community College. Plaintiff stated that he is pursuing a degree in civil engineering. In fact, plaintiff has only taken two classes at Durham Tech, both which are remedial courses which plaintiff has previously completed. Additionally, plaintiff has required the assistance of a tutor, Elaine Sardi, to successfully complete these courses.
27. As a result of plaintiff's compensable injury by accident, plaintiff suffers from neurological problems, including delusional disorder and depression.
28. As the result of plaintiff's compensable injury by accident, plaintiff sustained a five percent functional impairment to his right hand.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 28, 1995, plaintiff sustained compensable injuries by accident to his right wrist and head arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of this August 28, 1995 compensable injury, plaintiff is disabled and is entitled to payment of temporary total disability compensation in the amount of $293.35 per week beginning December 1, 1995 and continuing until further order of the Commission or until plaintiff returns to work, subject to a credit to defendants for any wages earned during this period of time. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from plaintiff's compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. This medical treatment includes treatment for plaintiff's psychological problems and depression. N.C. Gen. Stat. § 97-25.
4. As a result of his injury by accident, plaintiff is entitled to compensation for the five percent permanent partial disability rating to his hand. N.C. Gen. Stat. § 97-31(12); Hill v. Hanes Corp.,319 N.C. 167, 353 S.E.2d 392 (1987).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation at the rate of $293.35 per week beginning December 1, 1995 until further order of the Commission or until plaintiff returns to work, subject to a credit for any wages earned during this period.
2. Subject to an attorney's fee approved below, defendants shall pay plaintiff permanent partial disability compensation at the rate of $293.35 per week for ten weeks for the five percent permanent partial disability rating to his hand.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's injury by accident which tend to effect a cure or lessen the period of disability.
4. An attorney's fee in the amount of 25% of the award is hereby approved for plaintiff's counsel. Said amount shall be deducted from the accrued amount and paid in a lump sum. Thereafter, the equivalent to every fourth check shall be paid to plaintiff's counsel.
5. Defendants shall pay the costs due to the Commission.
This the ___ day of February 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN