LESLIE S. AUGUR v. RICHARD G. AUGUR

No. 218A02

(Filed 20 December 2002)

**Declaratory Judgments— declining request for declaratory relief—abuse of discretion standard—constitutionality of Domestic Violence Act**

The Court of Appeals erred by concluding that defendant was entitled to a ruling from the trial court on his counterclaim for declaratory judgment regarding the constitutionality of the Domestic Violence Act based on an actual controversy existing between the parties, because: (1) North Carolina trial courts are expressly accorded discretion under N.C.G.S. § 1-257 which created declaratory judgment relief, and our trial courts are in a better position than appellate courts, in some instances, to assess the appropriateness of particular legal relief; (2) N.C.G.S. § 1-257 provides that the trial court may decline to grant declaratory relief where it would not terminate the uncertainty or controversy giving rise to the proceeding; (3) at the time the trial court dismissed defendant's counterclaim, defendant had already received the relief sought which was removal of the domestic violence protection order against defendant and a finding that its imposition was unwarranted; and (4) the trial court's disposition had the effect of leaving defendant exactly where he was prior to the filing of plaintiff's complaint.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 149 N.C. App. 851, 561 S.E.2d 568 (2002), affirming in part and reversing and remanding in part a judgment entered 11 December 2000 by Cash, J., in District Court, Buncombe County. Heard in the Supreme Court 16 October 2002.

*Pisgah Legal Services, Inc., by Anne Bamberger; and Amy E. Ray, for plaintiff-appellant.*

*Carter and Kropelnicki, P.A., by Steven Kropelnicki, Jr., for defendant-appellee.*

MARTIN, Justice.

Plaintiff Leslie Augur and defendant Richard Augur married in 1981 and divorced in 1996. On 26 October 1999, plaintiff filed a complaint and motion for a domestic violence protection order (DVPO) against defendant pursuant to the provisions of the North Carolina Domestic Violence Act (DVA), N.C.G.S. ch. 50B (2001). Plaintiff alleged defendant had assaulted her the previous night and had demonstrated abusive behavior toward plaintiff and her children in the past.

The trial court entered an *ex parte* DVPO against defendant on 28 October 1999. The DVPO instructed defendant: (1) to "not assault, threaten, abuse, follow, harass . . . , or interfere with" plaintiff; (2) to stay away from plaintiff's residence and workplace; (3) to avoid all contact with plaintiff; and (4) to not possess or purchase a firearm during the next ten days.

On 1 November 1999, the trial court held a hearing where both parties were represented by counsel. At the hearing, defendant served plaintiff with an answer, a counterclaim for declaratory judgment as to the constitutionality of the DVA, and a motion to dismiss. Defendant's request for declaratory relief included the assertion that the provisions of the DVA are facially unconstitutional. At defendant's request, the trial court continued the hearing. A modified DVPO, without the firearm restriction, remained in effect until 15 November 1999 by mutual consent of the parties.

On 13 December 1999, the trial court ruled plaintiff had failed to show that any domestic violence had occurred and took under advisement the issues raised by defendant's counterclaim for declaratory relief. On 7 August 2000, the trial court entered an order dismissing plaintiff's complaint and denying defendant's counter-

claim as moot. On motion of the defendant, the trial court's judgment was set aside to afford the North Carolina Attorney General the opportunity to be heard on the constitutional issues raised by defendant's counterclaim, as required by N.C.G.S. § 1-260. The Attorney General ultimately agreed with the trial court's original disposition of the matter and declined the opportunity to be heard. Therefore, the trial court entered another judgment dated 11 December 2000, dismissing plaintiff's complaint and again denying defendant's request for declaratory judgment on mootness grounds. Defendant appealed to the Court of Appeals.

A divided panel of the Court of Appeals reversed the trial court order in part, remanding the case for consideration of the issues raised by defendant's counterclaim. *Augur v. Augur*, 149 N.C. App. 851, 561 S.E.2d 568 (2002). The Court of Appeals stated that the existence of an " 'actual controversy . . . both at the time of the filing of the pleading and at the time of the hearing' " is a prerequisite to the exercise of subject matter jurisdiction under North Carolina's version of the Uniform Declaratory Judgment Act (NCUDJA), N.C.G.S. §§ 1-253 to 1-267 (2001). *Augur*, 149 N.C. App. at 853, 561 S.E.2d at 570 (quoting *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585, 347 S.E.2d 25, 30 (1986)) (alteration in original) (emphasis omitted). The Court of Appeals determined that an actual controversy existed between the parties both on 1 November 1999 and on 13 December 1999 because the merits of defendant's counterclaim for declaratory judgment could not be determined by dismissal of plaintiff's complaint. *Id.* at 854, 561 S.E.2d at 570. Therefore, defendant was entitled to a ruling on the constitutionality of the DVA. *Id.*

Judge Greene, in dissent, agreed that an actual controversy existed at the time defendant filed his counterclaim but stated that defendant was no longer affected by the DVA after dismissal of plaintiff's complaint. *Id.* at 855, 561 S.E.2d at 571 (Greene, J., dissenting). Since the validity of a statute can be " 'challenged [only] by a person directly and adversely affected' " by it, the dissent asserted that the trial court no longer had jurisdiction over defendant's counterclaim after plaintiff's complaint was dismissed. *Id.* (quoting *City of Greensboro v. Wall*, 247 N.C. 516, 519-20, 101 S.E.2d 413, 416 (1958)). Plaintiff appeals on the basis of the dissenting opinion. *See* N.C.G.S. § 7A-30(2) (2001).

At the outset, the parties agree that an actual controversy existed in the instant case at the time defendant filed his counterclaim. Therefore, for purposes of our discussion, we assume the court had

AUGUR v. AUGUR

[356 N.C. 582 (2002)]

jurisdiction over defendant's counterclaim. *See In re Peoples*, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978) (stating that once jurisdiction attaches, it is generally not ousted by subsequent events), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). When the trial court issued its order, it effectively declined to exercise its jurisdiction. Our initial inquiry, therefore, necessarily focuses on the trial court's authority to decline defendant's request for declaratory relief.

Section 1-257 of the NCUDJA, entitled "Discretion of court," provides: "[A] court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding . . . ." The NCUDJA became law in 1931, and section 1-257 is modeled after section 6 of the Uniform Declaratory Judgments Act (UDJA). *See* 12A U.L.A. 1 (1996) (noting the effective date and statutory citation for NCUDJA). *Compare* Uniform Declaratory Judgments Act § 6, 12A U.L.A. 302 (1996), *with* Act of March 12, 1931, ch. 102, sec. 5, 1931 Public Laws of N.C. 133, 134 (codified as amended at N.C.G.S. § 1-257) (demonstrating that the relevant language in N.C.G.S. § 1-257 is identical to section 6 of the UDJA).

In searching for guidance as to the meaning of section 1-257, we turn, as we have in other circumstances, to federal cases interpreting parallel federal provisions. *See, e.g., Department of Transp. v. Rowe*, 353 N.C. 671, 678, 549 S.E.2d 203, 209 (2001) (federal Due Process Clause caselaw persuasive but not controlling when analyzing the North Carolina Constitution), *cert. denied*, 534 U.S. 1130, 151 L. Ed. 2d 972 (2002); *State v. Thompson*, 332 N.C. 204, 219, 420 S.E.2d 395, 403 (1992) (same—Rules of Evidence); *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 655, 194 S.E.2d 521, 530-31 (1973) (same—state antitrust law).

Significantly, the federal declaratory judgment statute lacks an express provision empowering courts to decline a party's request for declaratory relief.[1] *See* 28 U.S.C. § 2201 (2000). Federal courts have long consulted the UDJA, however, when considering the question of a trial court's discretion to decline declaratory relief. *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 243, 97 L. Ed. 291, 295-96 (1952); *Gross v. Fox*, 496 F.2d 1153, 1155 n.10 (3d Cir. 1974); *Aetna Cas. &*

---

1. A discretionary provision was omitted from the federal statute in the interest of statutory brevity, not as part of any effort to deny federal courts the discretion to decline a request for declaratory relief. Edwin Borchard, *Declaratory Judgments* 313 (2d ed. 1941).

*Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937). *See generally* 12 James W. Moore, et al., *Moore's Federal Practice* § 57 App.02[1] (3d ed. 2002) (the UDJA provides guidance as to the scope and function of the federal act). Because the North Carolina statute is based upon the UDJA, federal law is instructive when examining the discretion vested in our trial courts under section 1-257.

Despite the lack of a provision similar to section 6 of the UDJA within the federal declaratory judgment statute, federal trial courts are not obligated to issue declaratory judgments but rather do so in their discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87, 132 L. Ed. 2d 214, 223 (1995); *Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 526 (6th Cir. 2001); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 424 (4th Cir. 1998); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 1101, 136 L. Ed. 2d 730 (1997). The federal declaratory judgment statute thus confers a power upon the court, not a right upon litigants. *Wilton*, 515 U.S. at 287, 132 L. Ed. 2d at 223 (quoting *Wycoff Co.*, 344 U.S. at 241, 97 L. Ed. at 294-95); *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 397 (2d Cir. 1975).

In contrast to the federal declaratory judgment statute, section 1-257 of the NCUDJA explicitly gives courts discretion to decline requests for declaratory relief. Moreover, other NCUDJA provisions speak to the "power" of courts to grant such judgments, not to any obligation to do so. N.C.G.S. § 1-253 (courts have the "power" to declare legal status); N.C.G.S. § 1-254 (courts have the "power" to construe and validate legal instruments); *see also* N.C.G.S. § 1-255 (describing those who may "apply" for declaratory relief). Thus, while federal courts have construed the federal act to allow trial courts to grant or decline declaratory relief in their discretion, the NCUDJA has explicitly accorded this discretion to our trial courts.

The United States Supreme Court has noted that trial courts are more adept than appellate courts at fact-finding, litigation supervision, and the application of facts to fact-dependent legal standards. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 233, 113 L. Ed. 2d 190, 199 (1991). These "institutional advantages" make it appropriate for trial courts to have some degree of discretion to decline requests for declaratory relief:

We believe it more consistent with the [declaratory judgment] statute to vest [trial] courts with discretion in the first instance,

because facts bearing on the usefulness of the declaratory judg-
ment remedy, and the fitness of the case for resolution, are pecu-
liarly within their grasp. . . . [P]roper application of the abuse of
discretion standard on appellate review can, we think, provide
appropriate guidance to [trial] courts.

*Wilton*, 515 U.S. at 289, 132 L. Ed. 2d at 225 (citing *First Options of
Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948, 131 L. Ed. 2d 985, 996
(1995); *Miller v. Fenton*, 474 U.S. 104, 114, 88 L. Ed. 2d 405, 413
(1985)). Thus, federal trial courts have discretion to stay or dis-
miss an action seeking declaratory relief at any point before entry of
judgment. *DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997);
*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996).

Similarly, our trial courts are in a better position than appellate
courts, in some instances, to assess the appropriateness of particular
legal relief, and therefore an abuse of discretion standard is applied
to the trial court's decision to grant or deny relief. *State v. Julian*, 345
N.C. 608, 611, 481 S.E.2d 280, 282 (1997) (trial court is in a better posi-
tion than appellate court to determine if a new trial is necessary); *Hill
v. Hanes Corp.*, 319 N.C. 167, 179, 353 S.E.2d 392, 399 (1987) (grant-
ing of relief under Rule 60(b) requires resolution of questions more
properly suited for trial courts); *cf. Stanback v. Stanback*, 287 N.C.
448, 459, 215 S.E.2d 30, 38 (1975) (upon a sufficient affidavit, granting
of order compelling inspection of documents rests in the trial court's
discretion). As demonstrated by the language of section 1-257, and
more fully explained below, the propriety of declaratory relief in any
particular situation depends upon whether it will actually resolve the
controversy at hand. Our trial courts are well suited to conduct this
inquiry under the NCUDJA.

Because North Carolina trial courts are expressly accorded dis-
cretion under the very statute creating the declaratory judgment rem-
edy, N.C.G.S. § 1-257, and because trial courts are best positioned to
assess the facts bearing on the usefulness of declaratory relief in a
particular case, *compare Hill*, 319 N.C. at 179, 353 S.E.2d at 399, *with
Salve Regina Coll.*, 499 U.S. at 233, 113 L. Ed. 2d at 199, the trial
court's decision to decline a party's request for declaratory relief is
reviewed under the abuse of discretion standard. *See Wilton*, 515 U.S.
at 289, 132 L. Ed. 2d at 224.

The express language of section 1-257 necessarily guides the
exercise of the trial court's discretion. The trial court may decline to
grant declaratory relief where it "would not terminate the uncertainty

or controversy giving rise to the proceeding." N.C.G.S. § 1-257. The preeminent treatise on declaratory judgments sets forth two criteria to aid in the interpretation of this language. Borchard, *Declaratory Judgments* at 299. According to Professor Borchard, a declaratory judgment should issue "(1) when [it] will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Id.* When these criteria are not met, no declaratory judgment should issue. *Id.* Thus, declaratory judgments should not be made " 'in the air,' or in the abstract, *i.e.* without definite concrete application to a particular state of facts which the court can by the declaration control and relieve and thereby settle the controversy." *Id.* at 306.

Similar criteria have guided the discretion of other courts in issuing declaratory relief. Federal courts have long cited to Borchard's treatise with approval when discussing the discretion of a trial court to enter declaratory judgment. *See, e.g., Wilton,* 515 U.S. at 288, 132 L. Ed. 2d at 224; *State Farm Fire & Cas. Co. v. Mhoon,* 31 F.3d 979, 983 (10th Cir. 1994); *Natural Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency,* 966 F.2d 1292, 1299 (9th Cir. 1992); *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984); *McCorkle v. United States,* 559 F.2d 1258, 1263 (4th Cir. 1977), *cert. denied,* 434 U.S. 1011, 54 L. Ed. 2d 755 (1978). State appellate courts have also interpreted their versions of the UDJA as according trial courts similar discretion. *See, e.g., Grimm v. County Comm'rs of Washington Cty.,* 252 Md. 626, 632, 250 A.2d 866, 869 (1969); *Allstate Ins. Co. v. Firemen's Ins. Co.,* 76 N.M. 430, 433-34, 415 P.2d 553, 555 (1966); *Sullivan v. Chafee,* 703 A.2d 748, 751 (R.I. 1997); *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 468 (Tex. 1995). Notably, our Court of Appeals has made recent use of Borchard's analysis. *Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.,* 141 N.C. App. 569, 578, 541 S.E.2d 157, 163 (2000) (discussing Borchard's treatise), *disc. rev. denied,* 353 N.C. 370, 547 S.E.2d 433 (2001); *see also Farber v. N.C. Psychology Bd.,* —— N.C. App. ——, ——, 569 S.E.2d 287, 299 (2002) (citing *Coca-Cola,* 141 N.C. App. at 577-79, 541 S.E.2d at 163-64).

Consideration of these well recognized principles leads us to conclude that section 1-257 permits a trial court, in the exercise of its discretion, to decline a request for declaratory relief when (1) the requested declaration will serve no useful purpose in clarifying or settling the legal relations at issue; or (2) the requested declaration will

not terminate or afford relief from the uncertainty, insecurity, or controversy giving rise to the proceeding. The trial court's decision to decline a request for declaratory relief will be overturned only upon a showing that it has abused its discretion, i.e., the recognized criteria have been ignored, or the decision is otherwise "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998).

Although our statute empowers a trial court to decline a request for declaratory relief under certain circumstances, section 1-257 should not be applied to thwart a properly presented constitutional challenge. Our courts are obligated to protect fundamental rights when those rights are threatened. *Corum v. University of N.C.*, 330 N.C. 761, 783, 413 S.E.2d 276, 290, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992). To that end, "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law." N.C. Const. art. I, § 18. Our State Constitution admonishes that "[a] frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty." N.C. Const. art. I, § 35. Therefore, where it " 'clearly appears either that property or fundamental human rights are denied in violation of constitutional guarantees,' " *Jernigan v. State*, 279 N.C. 556, 562, 184 S.E.2d 259, 264 (1971) (quoting *Roller v. Allen*, 245 N.C. 516, 518, 96 S.E.2d 851, 854 (1957)), and where a statutory provision is specifically challenged by a person directly affected by it, *id.* (citing *Wall*, 247 N.C. at 519-20, 101 S.E.2d at 416), declaratory relief as to the constitutional validity of that provision is appropriate. *Id.*; *see also Malloy v. Cooper*, 356 N.C. 113, 118, 565 S.E.2d 76, 79-80 (2002). In other words, when the requested declaration satisfies the recognized criteria we articulate above, the trial court has no discretion to decline the request. In any event, when the trial court exercises its statutory discretion, its action should be guided by the rule we have followed for many years: " '[C]ourts will not entertain or proceed with a cause merely to determine abstract propositions of law.' " *Roberts v. Madison Cty. Realtors Ass'n*, 344 N.C. 394, 399, 474 S.E.2d 783, 787 (1996) (quoting *Peoples*, 296 N.C. at 147, 250 S.E.2d at 912).

In the instant case, the trial court properly declined defendant's request for issuance of declaratory relief. At the time the trial court dismissed defendant's counterclaim, defendant had already received the relief sought: removal of the DVPO and a finding that its imposition was unwarranted. The trial court concluded, as a matter of law,

that no domestic violence had occurred, and this determination exonerated defendant from any allegations of wrongdoing. The trial court's disposition had the effect of leaving defendant exactly where he was prior to the filing of plaintiff's complaint—free from the taint of wrongful accusation or legal detriment. *Cf. Brisson v. Kathy A. Santoriello, M.D., P.A.*, 351 N.C. 589, 593, 528 S.E.2d 568, 570 (2000) (voluntary dismissal by the plaintiff returns the plaintiff to the legal position enjoyed prior to filing of the complaint); N.C.G.S. § 50B-6 (DVA shall not be construed to grant any person legal status for any purpose other than those expressly discussed therein). It also eliminated the possibility that defendant may again become subject to the DVA based upon plaintiff's unfounded allegations. *See Whedon v. Whedon*, 313 N.C. 200, 210, 328 S.E.2d 437, 443 (1985) (involuntary dismissal acts as a final adjudication on the merits and ends a lawsuit); *see also* 2 G. Gray Wilson, *North Carolina Civil Procedure* § 41-1, at 33 (1995) (same). Therefore, the trial court's resolution eliminated any present or future legal effect the DVA might have on defendant as a result of plaintiff's complaint. Because defendant was not subject to the provisions of the DVA at the time the trial court addressed defendant's counterclaim and because he made no showing that he was threatened with further litigation under the DVA, a declaration as to the constitutionality of the DVA could not alter defendant's legal position. Thus, issuance of a declaratory judgment under these circumstances would have been improvident.

We have generally held that temporary restraining orders, such as the DVPO issued in the present case, may be issued to prohibit potentially wrongful acts and preserve the status quo pending judicial resolution of plaintiff's claim. *See Seaboard Air Line R.R. Co. v. Atlantic Coast Line R.R. Co.*, 237 N.C. 88, 94, 74 S.E.2d 430, 434 (1952); *Roberts*, 344 N.C. at 399, 474 S.E.2d at 787 (an injunction is available in any case where it may provide significant benefits that outweigh its disadvantages). Violation of many provisions of this DVPO could conceivably have led to criminal sanction. *See* N.C.G.S. § 14-277.3 (2001) (defining crime of stalking); *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967) (defining common-law crime of assault). Defendant obviously does not claim he was unconstitutionally restrained from engaging in criminally punishable behavior.

Defendant's counterclaim made various broadside attacks on the DVA but included no specific allegations as to how this particular defendant was unconstitutionally or adversely affected by its provisions in any significant way. At the time of the hearing on

defendant's counterclaim, none of defendant's rights were encumbered. Moreover, no specific anticipated encumbrances were described among the allegations of defendant's counterclaim. Because it was unnecessary to mount this broad constitutional attack on the DVA to protect defendant's rights, the trial court's constitutional examination of the DVA in this context would have been merely academic in nature.

As we have noted before, the DVA is an effort on the part of the duly elected legislature to respond to "the serious and invisible problem" of domestic violence. *State v. Thompson*, 349 N.C. 483, 486, 508 S.E.2d 277, 279 (1998) (discussing the impetus behind enactment of the DVA; Act of May 14, 1979, ch. 561, 1979 N.C. Sess. Laws 592). As such, a ruling upon the facial constitutionality of the DVA should be made only when necessary and then only in a clearly defined factual setting.

Defendant does not assign as error that the trial court abused its discretion, and we discern no abuse of discretion in the proceedings below. Although the order is, admittedly, phrased in terms of mootness, the trial court apparently realized that the broad declaratory ruling requested by defendant would serve no useful purpose in terminating the discrete controversy at hand. Since the trial court would reach the same conclusion as we have under the proper legal standard, remand is unnecessary. Accordingly, the decision of the Court of Appeals is reversed.

REVERSED.