ANN MARIE CALABRIA, Plaintiff v. NORTH CAROLINA STATE BOARD OF ELECTIONS, LARRY LEAKE, GENEVIEVE SIMS, LORRAINE SHINN, CHARLES WINFREE, AND ROBERT CORDLE, Defendants

No. COA08-1269

(Filed 4 August 2009)

**Elections— rescue funds—changes in statutes—mootness**

> The trial court correctly dismissed a case in which plaintiff conceded an election, did not dispute that she is no longer entitled to receive rescue funds from the State Board, did not dispute that her claim was subject to the mootness doctrine, and none of the exceptions to that doctrine applied. Amendments to statutes have addressed the issues raised in plaintiff's complaint, so that the exceptions for repetition and public interest did not apply, and the adverse collateral consequences exception did not apply because the unresolved allegations of misconduct relied upon by plaintiff involved entities that were not parties to the action.

Appeal by plaintiff from order entered 21 May 2008 by Judge James C. Spencer, Jr. in Wake County Superior Court. Heard in the Court of Appeals 4 May 2009.

*Shanahan Law Group, PLLC, by Kieran J. Shanahan and John E. Branch, III, for plaintiff-appellant.*

*Roy Cooper, Attorney General, by Susan K. Nichols, Special Deputy Attorney General, and Mark A. Davis, Special Deputy Attorney General, for defendants-appellees.*

MARTIN, Chief Judge.

In North Carolina's 2006 General Election, two judges of this Court—Robin Hudson ("Hudson") and Ann Marie Calabria ("plaintiff")—were candidates for Associate Justice (the "Wainwright" seat) of the North Carolina Supreme Court. After reviewing their respective applications to become certified as North Carolina Judicial Public Financing candidates, the State Board of Elections ("State Board") so certified both candidates and disbursed $211,050.00 from the North Carolina Public Campaign Fund to both Hudson and plaintiff. Seven days before the election, FairJudges.Net, a North Carolina non-profit corporation, reported to the State Board that it had disbursed $204,225.00 to run a television advertisement in markets across the State, including Raleigh-Durham, Greensboro,

Charlotte, High Point, and Winston-Salem. The advertisement's audio track stated:

> Fairness. It's the most important quality a judge can have. Sarah Parker, Mark Martin, Patricia Timmons-Goodson, and Robin Hudson. Fair, unbiased judges. That's what we need in our North Carolina courts. Sarah Parker, Mark Martin, Patricia Timmons-Goodson, and Robin Hudson. Judges who will treat all people fairly.

This advertisement was re-broadcast numerous times in selected markets throughout the State between 31 October 2006 and 7 November 2006.

On 31 October 2006, plaintiff sent a letter to Gary Bartlett, executive director of the State Board, seeking "rescue funds"[1] in "an amount equal to the reported excess" "funneled" to Hudson's campaign by FairJudges.Net. Plaintiff asserted that FairJudges.Net was a "partisan group of Democratic [political action committees], candidates, unions, trial lawyers and wealthy Democratic Party activists [that] has inserted itself and huge amounts of cash into this campaign in an effort to defeat [plaintiff] and to elect [Hudson] to the North Carolina Supreme Court" in contravention of "what had been a nonpartisan, publicly financed election organized under a new statute the legislature intended to eliminate partisan politics and private interest money from the process of electing judges." On 1 November 2006, Executive Director Bartlett denied plaintiff's request for rescue funds for two stated reasons: (1) FairJudges.Net's communications were not "independent expenditures," but rather "electioneering communications," which "would not count toward [plaintiff's] trigger for rescue funds" under N.C.G.S. §§ 163-278.66 and 163-278.67 as written in 2006; and (2) "[e]ven if the funds spent for the advertisement by FairJudges.net did count toward [plaintiff's] trigger for rescue funds, only the amount of $51,056.25 would be counted because it would be divided among the four candidates named in the advertisement," and this amount "combined with the independent expenditures totaling $23,759.00 [attributed to Hudson's campaign to date] would only total $74,815.25, not enough to exceed the trigger for rescue funds." Executive Director Bartlett further informed plaintiff that she was

---

1. The term "rescue funds" is used throughout this opinion, since the term appeared in the text of the statutes at issue at the time this action began. However, the General Assembly has since amended Chapter 163 "by deleting the term 'rescue' wherever it appears and substituting the term 'matching.'" *See* 2007 N.C. Sess. Laws 1622, ch. 510, § 1(c).

entitled to appeal his decision to the State Board within three business days pursuant to N.C.G.S. § 163-278.68(c).

On 3 November 2006, plaintiff's counsel sent a letter to Executive Director Bartlett appealing to the State Board from his decision "denying [plaintiff's] request for [rescue] funds and the reasons in support of that denial." After considering the matter on that same day, the State Board, by an evenly-divided vote, denied plaintiff's request to overturn Executive Director Bartlett's decision in an order entered on 20 November 2006. The State Board also ordered that "[t]he staff shall make appropriate inquiries into the allegations of coordinated activities by FairJudges.Net and the North Carolina Democratic Party, including their officers, agents, and employees, and report the results of their investigation to the State Board as expeditiously as possible." On 7 November 2006, Hudson defeated plaintiff in the election by 20,551 votes out of 1,593,171 votes cast.

On 20 November 2006, plaintiff filed an election protest with the State Board alleging that the State Board's "failure" to "release rescue funds coupled with the coordinated expenditures of a State political party in amounts of funds which are nearly equal to the total amount of funds received by [plaintiff] from the Public Campaign Finance Fund" are "irregularities and improprieties which occurred in this election to such an extent that they taint the results of the entire election and cast doubt on its fairness." Plaintiff requested that the State Board "withhold certification of this election until it completes its administrative investigation of this matter and the impact of any such findings on this election contest" and, in the alternative, requested that the State Board conduct a hearing on this matter at which plaintiff could "examine witnesses to determine the extent to which the election communications were []coordinated between fairjudges.net and the N.C. Democratic party." After hearing the matter on 28 November 2006, the State Board dismissed plaintiff's election protest, determining "there is not probable cause to believe that a violation of election law or irregularity or misconduct has occurred in the conduct of this election." The State Board also determined that the dismissal of plaintiff's election protest "in no way alters the order entered on November 20, 2006, directing the staff to make 'appropriate inquiries into the allegations of coordinated activities by FairJudges.net and the North Carolina Democratic Party.' "

Plaintiff filed a Verified Complaint for Declaratory Judgment; Petition for Judicial Review of an Agency Decision and Appeal from Decision of the North Carolina State Board of Elections and Request

CALABRIA v. N.C. STATE BD. OF ELECTIONS

[198 N.C. App. 550 (2009)]

for Injunctive Relief ("Complaint") against defendants—the State Board; Larry Leake, in his official capacity as Chairman of the State Board; and Genevieve Sims, Lorraine Shinn, Charles Winfree, and Robert Cordle, each in his or her official capacity as members of the State Board—in which she sought: (I) an appeal from the State Board's decision to deny her "rescue funds"; (II) a declaratory judgment; (III) an appeal from the State Board's decision to deny her election protest; and (IV) an injunctive remedy due to an alleged violation of her civil rights. After the State Board issued the certificate of election to Hudson, who took office on 4 January 2007, plaintiff "acknowledge[d] that Counts I, III, and IV of her Complaint ha[d] been fully adjudicated or [we]re moot and that therefore only Count II for a Declaratory Judgment" of her Complaint remained before the trial court. Additionally, although plaintiff sought a declaratory judgment as to several issues in her Complaint, according to plaintiff's brief before this Court, "[t]he parties later agreed that the Legislature amended the Campaign Finance Act, which resolved future application of the statute as to" all but the following issue: "[W]ere the expenditures by 'Fairjudges.net' campaign contributions in excess of the limits allowed or in violation of the Campaign Finance Act?"

On 26 January 2007, defendants moved to dismiss the action for lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure. Defendants subsequently filed an Amended Motion to Dismiss, moving to dismiss plaintiff's claims on the additional grounds that the North Carolina General Assembly's enactment of Session Law 2007-510 rewrote N.C.G.S. §§ 163-278.66 and 163-278.67, "further render[ed] the claims asserted by [plaintiff] in this action subject to dismissal based on the doctrine of mootness since [plaintiff's] claims were filed prior to the enactment of S.L. 2007-510 and were, therefore, based entirely on the prior wording of those statutes." On 21 May 2008, the superior court granted defendants' motion and dismissed plaintiff's Complaint with prejudice after concluding that "Count II of Plaintiff's Complaint is moot and should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted." Plaintiff appealed to this Court from the trial court's 21 May 2008 Order.

"The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice." *Lide v. Mears*, 231

N.C. 111, 117, 56 S.E.2d 404, 409 (1949). "[I]t does not undertake to convert judicial tribunals into counsellors [sic] and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightenment or practical guidance concerning their legal affairs." *Id.* Instead, "[t]he Act recognizes the need of society for officially stabilizing legal relations by adjudicating disputes before they have ripened into violence and destruction of the *status quo.*" *Id.* at 117-18, 56 S.E.2d at 409 (internal quotation marks omitted).

> [The Declaratory Judgment Act] satisfies this social want by conferring on courts of record authority to enter judgments declaring and establishing the respective rights and obligations of adversary parties in cases of actual controversies without either of the litigants being first compelled to assume the hazard of acting upon his own view of the matter by violating what may afterwards be held to be the other party's rights or by repudiating what may be subsequently adjudged to be his own obligations.

*Id.* at 118, 56 S.E.2d at 409. "This being so, an action for a declaratory judgment will lie only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute." *Id.* Thus, "a declaratory judgment should issue (1) when [it] will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Augur v. Augur*, 356 N.C. 582, 588, 573 S.E.2d 125, 130 (2002) (alteration in original) (internal quotation marks omitted). "When these criteria are not met, no declaratory judgment should issue." *Id.*

Moreover, when, during the course of litigation, " 'it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.' " *Pearson v. Martin*, 319 N.C. 449, 451, 355 S.E.2d 496, 497 (quoting *In re Peoples*, 296 N.C. 109, 147-48, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979)), *reh'g denied*, 319 N.C. 678, 356 S.E.2d 789 (1987). "That [an] action was brought as a declaratory judgment action does not alter this result. Under the Declaratory Judgment Act, jurisdiction does not extend to questions that are altogether moot." *Id.* at 451, 355 S.E.2d at 498. " 'The statute does not require the

court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise.' " *Id.* at 451-52, 355 S.E.2d at 498 (quoting *Tryon v. Duke Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942)). Thus, "[i]f the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action," *In re Peoples*, 296 N.C. at 148, 250 S.E.2d at 912, because "a moot question is not within the scope of our Declaratory Judgment Act." *Morris v. Morris*, 245 N.C. 30, 36, 95 S.E.2d 110, 114 (1956).

In the present case, plaintiff asked the trial court to declare, with respect to "*her* rights, status, and other legal relations" only, whether the expenditures by FairJudges.Net were contributions "in violation of the Campaign Finance Act" which "ultimately should have resulted in the [State Board's] grant of rescue funds to [plaintiff]." However, plaintiff has since "conceded the election of [Hudson]," as "the election has already occurred and the winner has been certified," and does not dispute that she is no longer entitled to receive the rescue funds she was seeking from the State Board. *See* N.C. Gen. Stat. § 163-278.64(d)(7) (2007) ("A candidate shall return to the [Public Campaign] Fund any amount distributed for an election that is unspent and uncommitted at the date of the election, or at the time the individual ceases to be a certified candidate, whichever occurs first."); N.C. Gen. Stat. § 163-278.66(b) (2007) ("A certified candidate who ceases to be certified or ceases to be a candidate or who loses an election shall . . . return any unspent revenues received from the Fund."). In fact, plaintiff does not dispute that her claim is subject to the mootness doctrine, but contends her claim was properly before the trial court because it meets the following three exceptions to the mootness doctrine: (A) the "capable of repetition, yet evading review" exception; (B) the "collateral legal consequences of an adverse nature" exception; and (C) the "public interest" exception.

A.

Plaintiff first contends the remaining issue in Count II of her Complaint is excepted from the mootness doctrine because it is "capable of repetition yet evad[ed] review." Assuming, without deciding, that plaintiff's Complaint alleged a proper claim, we disagree that it is excepted from the mootness doctrine under this exception.

Two elements are required for the "capable of repetition, yet evading review" exception to the mootness doctrine to apply: "(1) the challenged action [is] in its duration too short to be fully litigated

prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (alterations in original) (internal quotation marks omitted), *disc. review denied*, 324 N.C. 543, 380 S.E.2d 770 (1989). Since the parties do not dispute that plaintiff's claim satisfied the first element of this exception, we address only the second element.

At the time of the November 2006 General Election, N.C.G.S. § 163-278.67(a) provided that, when "funds in opposition to a certified candidate or in support of an opponent to that candidate" are reported to "exceed the trigger for rescue funds[,] . . . the Board shall issue immediately to that certified candidate an additional amount equal to the reported excess within the limits set forth in this section." N.C. Gen. Stat. § 163-278.67(a) (2005). In 2006, "funds in opposition to a certified candidate or in support of an opponent to that candidate" were based upon a calculation which included "[t]he sum of all expenditures reported . . . of *entities making independent expenditures* in opposition to the certified candidate or in support of any opponent of that certified candidate." N.C. Gen. Stat. § 163-278.67(a)(2) (2005) (emphasis added). However, since the 2007 amendments to N.C.G.S. § 163-278.67(a), *see* 2007 N.C. Sess. Laws 1621-22, ch. 510, § 1(b), "funds in opposition to a certified candidate or in support of an opponent to that candidate" are now based upon a calculation which includes "[t]he aggregate total of all expenditures and payments reported . . . of *entities making independent expenditures or electioneering communications* in opposition to the certified candidate or in support of any opponent of that certified candidate." N.C. Gen. Stat. § 163-278.67(a)(2) (2007) (emphasis added).

As discussed above, the State Board's decision to deny plaintiff rescue funds was based upon a determination that (1) FairJudges.Net's communications were "electioneering communications," which did not count toward the trigger for rescue funds under the 2006 version of N.C.G.S. §§ 163-278.66 and 163-278.67; and (2) even if the funds spent for the advertisements by FairJudges.Net *did* count toward plaintiff's trigger for rescue funds, only a portion of those funds would be counted, and that amount, when combined with the independent expenditures made in support of Hudson as of the date of plaintiff's request for rescue funds, would not have been enough to exceed the trigger for rescue funds as determined by statute. Plaintiff does not dispute that the 2007 amendments to

N.C.G.S. §§ 163-278.66 and 163-278.67 directly address these issues. *See* 2007 N.C. Sess. Laws 1620-22, ch. 510, § 1(a)-(b).

However, plaintiff asserts that the amendments to N.C.G.S. § 163-278.67 do not render her claim moot because "the issue of coordination of spending to influence elections, regardless of the expenditures' legal status as an 'electioneering communication' or an 'independent expenditure[,]' was not resolved by [the amendments]." Accordingly, plaintiff "contends that Fairjudges.net's expenditures were coordinated with the Democratic Party, thereby rendering them contributions to [plaintiff's] opponent's campaign which ultimately should have resulted in the [State Board's] grant of rescue funds to [plaintiff]." Consequently, plaintiff states that her Complaint "asks the Court to declare whether the expenditures by Fairjudges.net were either contributions in excess of the limits allowed by the Campaign Finance Act or contributions otherwise in violation of the Campaign Finance Act, which implicates the 'coordination' issue; if so[, plaintiff] should have been entitled to rescue funds." In other words, although it may be true that "[t]he issue of what constitutes a 'coordinated' campaign will assuredly arise again in North Carolina elections," plaintiff's argument before this Court is that FairJudges.Net's alleged "coordination" with the North Carolina Democratic Party frustrated her efforts to obtain rescue funds from the Public Campaign Fund. However, because the State Board is now statutorily *required*, as a result of the 2007 amendments to N.C.G.S. §§ 163-278.66 and 163-278.67, to consider disbursements for "electioneering communications," in addition to "independent expenditures," when determining whether to issue rescue funds to a certified candidate—without any exception for disbursements that are "coordinated" with a political party—we conclude that there is no "reasonable expectation that [plaintiff] would be subjected to the same action again." *See Crumpler*, 92 N.C. App. at 723, 375 S.E.2d at 711 (internal quotation marks omitted). Therefore, we hold that this issue does not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine.

## B.

Plaintiff next contends the remaining issue in Count II of her Complaint is excepted from the mootness doctrine because it would result in collateral legal consequences of an adverse nature. Again, we disagree.

As discussed above, "[g]enerally, an appeal should be dismissed as moot '[w]hen events occur during the pendency of [the] appeal

which cause the underlying controversy to cease to exist.' " *Smith ex rel. Smith v. Smith*, 145 N.C. App. 434, 436, 549 S.E.2d 912, 914 (2001) (second and third alterations in original) (quoting *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977)). "Nevertheless, 'even when the terms of the judgment below have been fully carried out, if collateral legal consequences of an adverse nature can reasonably be expected to result therefrom, then the issue is not moot and the appeal has continued legal significance.' " *Id.* (quoting *In re Hatley*, 291 N.C. at 694, 231 S.E.2d at 634). Moreover, "[t]he continued justiciability of appeals involving collateral legal consequences is not limited to criminal cases. A civil appeal is not moot when the challenged judgment may cause collateral legal consequences for the appellant." *In re A.K.*, 360 N.C. 449, 453, 628 S.E.2d 753, 756 (2006).

In the present case, plaintiff argues: "Here, *the conduct of the parties* has not been ruled on at all. If the conduct is illegal, the litigants and the public are entitled to a final ruling, and *the adverse legal consequence is to leave allegations of misconduct unresolved.*" (Emphasis added.) She continues: "This clarification is necessary and needed because the [State Board] has regretfully failed to follow the evidence it unearthed and has failed to make a determination as to the 'coordinated contribution' issue presented in this matter." However, plaintiff also asserts that she does not want this Court to "make a ruling that Fairjudges.net and the North Carolina Democratic Party did something wrong so that they can be punished, but rather, is seeking a declaration to whether the coordination between the two entities constituted contributions to the Hudson campaign *triggering [plaintiff's] right to rescue funds.*" (Emphasis added.) In other words, in support of plaintiff's contention that the issue before this Court is subject to the "collateral legal consequences of an adverse nature" exception, plaintiff asserts that she is seeking a declaratory judgment regarding "unresolved" "allegations of misconduct" "of the parties," but alleges "misconduct" and "illegal[ity]" only on the part of FairJudges.Net and the North Carolina Democratic Party—neither of whom are parties to this action. Therefore, we are not persuaded by plaintiff's assertion that "leav[ing] allegations of misconduct" or alleged "illegal[ity]" of non-parties "unresolved" requires a determination by this Court that the trial court's dismissal of plaintiff's remaining claim "can reasonably be expected to result" in collateral legal consequences of an adverse nature in this matter. *See Smith ex rel. Smith*, 145 N.C. App. at 436, 549 S.E.2d at 914 (internal quotation marks omitted).

## C.

Finally, plaintiff contends the remaining issue in Count II of her Complaint is excepted from the mootness doctrine because it falls within the "public interest" exception. Again, we disagree.

"Even if moot, . . . this Court may, if it chooses, consider a question that involves a matter of public interest, is of general importance, and deserves prompt resolution." *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989) (per curiam). However, as discussed above, the relief plaintiff seeks in this case is an answer to the question of whether FairJudges.Net's alleged "coordination" with the North Carolina Democratic Party frustrated her efforts to obtain rescue funds from the Public Campaign Fund in the 2006 General Election. Since N.C.G.S. §§ 163-278.66 and 163-278.67 have since been amended and now require the State Board to consider disbursements for the type of communications which gave rise to the underlying action—making no exception from the issuance of rescue funds for those disbursements that are "coordinated" with a political party—we conclude that the question presented by plaintiff to this Court is not of such public interest as to except this matter from the mootness doctrine. Therefore, we hold that the trial court did not err when it determined that the remaining issue in plaintiff's Complaint is moot, and further hold that the matter does not fall within any of the three exceptions to the mootness doctrine as asserted by plaintiff. Accordingly, the trial court's order is affirmed. Our disposition of this appeal renders it unnecessary to address plaintiff's remaining assignments of error.

Affirmed.

Judges LEWIS and WALKER concur.