IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-1030

Filed: 5 December 2017

Orange County, No. 15 CVS 1109

CHAPEL H.O.M. ASSOCIATES, LLC and CHAPEL HILL MOTEL ENTERPRISES, INC., Plaintiffs,

v.

RME MANAGEMENT, LLC, Defendant.

Appeal by plaintiffs from order entered 9 June 2016 by Judge R. Allen Baddour, Jr. in Orange County Superior Court. Heard in the Court of Appeals 8 March 2017.

>*Troutman Sanders LLP, by Ashley H. Story and D. Kyle Deak, for plaintiffs-appellants.*

>*Hedrick Gardner Kincheloe & Garofalo, LLP, by Patricia P. Shields and James R. Baker, for defendant-appellee.*

BERGER, Judge.

Chapel H.O.M. Associates, LLC ("H.O.M.") and Chapel Hill Motel Enterprises, Inc. ("Chapel Hill") (collectively "Plaintiffs") appeal from an order filed June 9, 2016 granting the motion to dismiss of RME Management, LLC ("Defendant") made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiffs argue the complaint states claims for which relief may be granted, and the trial court erred by granting Defendant's motion. We affirm in part and reverse in part.

Factual & Procedural Background

H.O.M. entered into a forty-nine year lease on March 17, 1966 for a parcel of land in Chapel Hill, North Carolina. The lease contained a renewal option for an additional forty-nine years that, if written notice was given at least six months before lease termination, would have allowed the renewal lease term to begin on January 1, 2016. Chapel Hill sublet the property from H.O.M. beginning on January 9, 1967 for the operation and management of a hotel, and after exercising renewal options, continues to sublet the property.

While it is unclear when Defendant acquired the subject property from the original landowner, Defendant was the owner of the property as early as January 2014. In accordance with the terms of the original lease, the parties began negotiating renewal of the lease and sublease as early as December 3, 2013 when Chapel Hill communicated its intent to H.O.M. to extend the sublease, and on September 16, 2014 when H.O.M. notified Defendant that it intended to renew its lease. Both parties gave notice to renew well before the six month requirement of the lease and sublease.

Negotiations for renewal of the lease broke down because the parties could not agree on the method by which the price terms for the renewal of the lease would be set. To establish this price term for the lease contract, the parties were to each appoint a commercial property appraiser, and these two appraisers would appoint a

third appraiser. These three appraisers would then negotiate to reach an equitable and fair value of the property and its corresponding lease value to be paid monthly to RME. However, the parties could not agree on the appraisal methodology, and the third appraiser was never appointed.

After renewal negotiations broke down, Plaintiffs filed a complaint in the United States District Court for the Middle District of North Carolina on September 29, 2014. This complaint was dismissed on jurisdictional grounds. Plaintiffs refiled their complaint in Orange County Superior Court on August 28, 2015 stating causes of action for declaratory judgment, equitable estoppel, and unfair and deceptive trade practices. Defendant filed a motion on October 2, 2015 requesting the case be heard in the North Carolina Business Court, and seeking to dismiss Plaintiffs' complaint for failure to state a claim on which relief could be granted. On October 23, 2015, the Superior Court refused to designate the case as a complex business case, and so the case proceeded in Orange County Superior Court. Following a May 31, 2016 hearing on Defendant's motion to dismiss, the trial court entered an order on June 9, 2016 granting the motion with prejudice. It is from this order dismissing each of its causes of action that Plaintiffs have timely appealed.

Standard of Review

When a trial court considers a Motion to Dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint, treated

as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (citation and internal quotation marks omitted), *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). "[A] complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citation and internal quotation marks omitted), *disapproved of on other grounds by Dickens v. Puryear*, 302 N.C. 437, 448, 276 S.E.2d 325, 332 (1981). "[A]ll the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 165 (1970) (citation and internal quotation marks omitted).

<u>Analysis</u>

I. <u>Equitable Estoppel</u>

In North Carolina, the elements of equitable estoppel are:

> (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

*Friedland v. Gales*, 131 N.C. App. 802, 807, 509 S.E.2d 793, 796-97 (1998) (quoting *Parker v. Thompson-Arthur Paving Co.*, 100 N.C. App. 367, 370, 396 S.E.2d 626, 628-29 (1990)). Generally, equitable estoppel is not a cause of action, and may not be used as a sword in a complaint. *See id.* at 806, 509 S.E.2d at 796.

Here, Plaintiffs assert equitable estoppel in their amended complaint as an affirmative claim for relief. Plaintiffs allege:

> h. Defendant actively and knowingly engaged in the Lease renewal process and even admittedly engaged an appraiser pursuant to the terms of the Lease to determine the rent payable during the Renewal Term;
>
> i. . . . In detrimental reliance thereon, HOM traveled to Atlanta, Georgia on several occasions to negotiate the terms of the extension, HOM has had numerous telephone conferences and correspondence with RME regarding the renewal issues, HOM has engaged and paid for the services of legal counsel . . . ;
>
> . . . .
>
> l. Plaintiffs relied to their detriment upon Defendant's representations concerning the Lease Renewal, and have been damaged thereby.

Plaintiffs' allegations are not elements of a legally cognizable claim for relief. The trial court can conclude to a certainty that Plaintiffs would not recover under this theory. Therefore, the trial court did not err when it dismissed Plaintiffs' claim for equitable estoppel.

II. <u>Unfair and Deceptive Trade Practices</u>

This Court has stated "[u]nder N.C.G.S. § 75-1.1, a trade practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to [consumers]. A trade practice is deceptive if it has the capacity or tendency to deceive." *Branch Banking And Trust Co. v. Thompson*, 107 N.C. App. 53, 61-62, 418 S.E.2d 694, 700 (citation and internal quotation marks omitted), *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). Claims for unfair and deceptive trade practices "are distinct from actions for breach of contract." *Id.* at 62, 418 S.E.2d at 700. "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Id.* (citation omitted).

In *Branch Banking & Trust Co.* we adopted the Fourth Circuit Court of Appeal's interpretation of North Carolina's Unfair and Deceptive Trade Practices Act stating, "a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." *Id.* (quoting *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989)). Our cases finding sufficient aggravating factors have generally involved forms of forgery or deception. *See Garlock v. Henson*, 112 N.C. App. 243, 246, 435 S.E.2d 114, 115 (1993) (finding substantial aggravating circumstances where the evidence showed "defendant repeatedly denied the sale of the bulldozer when he knew it had been sold" and "defendant forged a bill of sale in an attempt to extinguish plaintiff's ownership

interest in the bulldozer"); *see also Talbert v. Mauney*, 80 N.C. App. 477, 480-81, 343 S.E.2d 5, 8 (1986) (holding "plaintiffs' allegations of wrongful and intentional harm to their credit rating and business prospects" along with allegations defendant told a potential investor "plaintiffs' credit documents were 'probably forged' " was sufficient to state a claim under the Unfair and Deceptive Trade Practices Act); *Walker v. Sloan*, 137 N.C. App. 387, 395-96, 529 S.E.2d 236, 243 (2000) (holding plaintiffs' allegations were sufficient to support a claim where defendant "attempted to break up the employee group . . . by attempting to bribe the portfolio managers into withdrawing from the group . . . ; refus[ed] to participate [in negotiations] in good faith . . . ; and . . . terminat[ed] the plaintiffs [from employment]").

Here, Plaintiffs' complaint merely alleges Defendant "has taken a contrary position" regarding the rent payable during the Renewal Term. Defendant now argues the term is void, whereas Defendant previously indicated an intention to abide by the terms of the lease. These facts do not allege substantial aggravating circumstances required to demonstrate a claim for unfair and deceptive trade practices. Plaintiffs merely allege a claim for breach of contract. Therefore, the trial court properly dismissed Plaintiffs' claim for unfair and deceptive trade practices.

III. <u>Declaratory Judgment</u>

In North Carolina, declaratory judgments are subject to the Uniform Declaratory Judgment Act ("NCUDJA"). N.C. Gen. Stat. § 1-253 to -267 (2015). *See*

*Augur v. Augur*, 356 N.C. 582, 573 S.E.2d 125 (2002). A jurisdictional prerequisite of a declaratory judgment claim is that a controversy must exist between the interested parties both at the time of filing the complaint and the time of hearing at which the matter comes before the trial court for a hearing. *Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 584-85, 347 S.E.2d 25, 29 (1986) (citation omitted).

"To satisfy the jurisdictional requirement of an actual controversy, it must be shown in the complaint that litigation appears unavoidable. Mere apprehension or the mere threat of an action or suit is not enough." *Wendell v. Long*, 107 N.C. App. 80, 82-83, 418 S.E.2d 825, 826 (1992) (citations omitted). "The courts of this state do not issue anticipatory judgments resolving controversies that have not arisen." *Id.* at 83, 418 S.E.2d at 826 (citation and internal quotation marks omitted). An actual controversy must exist to prevent courts from rendering a "purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." *Tryon v. Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942) (citations omitted).

"A court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding[.]" *Augur*, 356 N.C. at 585, 573 S.E.2d at 128 (brackets omitted) (citing N.C. Gen. Stat. § 1-257 (2001)). Section 1-257 expressly grants trial courts discretion when evaluating a declaratory judgment remedy

"because trial courts are best positioned to assess the facts bearing on the usefulness of declaratory relief in a particular case." *Id.* at 587, 573 S.E.2d at 130.

Accordingly, this Court reviews a trial court's decision under an abuse of discretion standard when ruling on a motion of declaratory relief. *Id.* Further, this Court has previously held that "our courts have jurisdiction to render declaratory judgments only when *the complaint* demonstrates the existence of an actual controversy." *Fabrikant v. Currituck Cty.*, 174 N.C. App. 30, 45, 621 S.E.2d 19, 29 (2005) (emphasis added) (citation and internal quotation marks omitted). Therefore, our review is limited to the contents of Plaintiffs' complaint.

"When the record shows . . . no basis for declaratory relief, or the complaint does not allege an actual, genuine existing controversy, a motion for dismissal under G.S. 1A-1, Rule 12(b)(6) will be granted." *Gaston Bd. of Realtors v. Harrison*, 311 N.C. 230, 234-35, 316 S.E.2d 59, 62 (1984) (citation omitted). However, "[a] motion to dismiss for failure to state a claim is seldom appropriate in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail." *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557, 366 S.E.2d 556, 558 (1988) (citation and internal quotation marks omitted).

In *Morris*, the plaintiffs contended that their declaratory judgment claim was sufficient to obtain a judicial determination of the validity of lease renewal terms, and the trial court had erred in granting defendant's Rule 12(b)(6) motion. *Id.* at 556,

366 S.E.2d at 557. This Court ruled that the plaintiffs had established a justiciable controversy over lease renewal terms and that dismissal pursuant to Rule 12(b)(6) was improper. *Id.* at 556-57, 366 S.E.2d at 557-58. The Court declined to review the lease agreement for validity because "[t]he issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 557, 366 S.E.2d at 558 (citation and internal quotation marks omitted).

Our Supreme Court has stated that a motion to dismiss "is allowed only when the record *clearly shows* that there is no basis for declaratory relief as when the complaint does not allege an actual, genuine existing controversy." *Consumers Power v. Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974) (emphasis added) (citations omitted). While a "mere difference of opinion between the parties is not sufficient for purposes of the Declaratory Judgment Act," *Fabrikant*, 174 N.C. App at 44, 621 S.E.2d at 29 (citation and internal quotation marks omitted), our Supreme Court has stated that a sufficient declaratory judgment claim exists when:

> (1) . . . a real controversy exists between or among the parties to the action; (2) . . . such controversy arises out of *opposing contentions* of the parties, made in good faith, *as to the validity* or construction of a deed, will or *contract in writing*, or as to the validity or construction of a statute, or municipal ordinance, contract, or franchise; and (3) . . . the parties to the action have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy, and may be determined by a judgment or decree in the action . . . ."

*Power Co.*, 285 N.C. at 449, 206 S.E.2d at 188 (emphasis added) (quoting *Light Co. v.*

*Iseley*, 203 N.C. 811, 820, 167 S.E 56, 60 (1933)).

In their complaint, Plaintiffs allege:

> 16. Pursuant to the terms of the Lease, the rental payment for the Renewal Term shall be negotiated between the parties, and if not able to be agreed upon each party shall choose an appraiser, who shall in turn chose a third appraiser, and the appraisers shall determine the annual rent to be paid during the Renewal Term.
>
> . . . .
>
> 20. HOM and RME, however, have been unable to agree upon the rent payable during the Renewal Term, and each party has, respectively, appointed an appraiser pursuant to paragraph 8 of the Lease.
>
> 21. Subsequent to such appointment, however, the appraiser for RME has taken a position that is contrary to the terms of the Lease and has attempted to create a conflict, thus interfering with the appointment of a third appraiser to set rent for the Renewal Term.
>
> 22. Plaintiffs submit that the reason why the appraisers have been unable to agree upon a third appraiser is because Defendant has taken a contrary position regarding the manner and method pursuant to which the rent payable during the Renewal Term shall be determined in order to improperly and tortiously attempt to create an ambiguity and argument for voiding the Lease, or in an attempt to extract more monies from Plaintiff.
>
> 23. Plaintiffs submit that a true and accurate reading of

the Lease as a whole and the manner or mechanism by which the rent was originally determined under the terms of the Lease shows that the Property and the rent applicable thereto during the Renewal Term shall be determined by appraising the Property "as is" . . . .

24. RME, conversely, takes the position that the Property and the rent applicable thereto during the Renewal Term shall be determined based upon the highest and best use of the Property . . .

. . . .

28. An actual controversy exists among HOM and RME as to the rights and obligations with regard to the Lease and the parties' respective interpretation as to the terms of the Lease with regard to Plaintiffs' exercise of their Renewal Term rights [in Paragraph 8] and the rent payable therefore.

29. A determination by this Court of the rights, duties, and liabilities as between HOM and RME under the terms of the Lease is necessary.

Plaintiffs' claim for declaratory relief was sufficient under the NCUDJA. Taking the allegations in the complaint as true, Plaintiffs pleaded their claim for declaratory relief with particularity alleging a genuine controversy between the parties before the trial court, not a mere disagreement between the parties. Dismissal was improper at this stage of the litigation, and we therefore reverse the trial court in regards to the declaratory judgment claim.

<u>Conclusion</u>

- 12 -

The trial court correctly dismissed the claims for equitable estoppel and unfair and deceptive trade practices, and we affirm that portion of the judgment. The trial court erred in dismissing the declaratory judgment action, and we therefore reverse as to that claim.

AFFIRMED IN PART, REVERSED IN PART.

Judge CALABRIA concurs.

Judge HUNTER, JR. concurs with separate opinion.

No. COA 16-1030– *Chapel H.O.M. Assocs., LLC v. RME Management, LLC*

HUNTER, JR., Robert N., Judge, concurring in separate opinion.

I agree Plaintiffs' claims for equitable estoppel and unfair and deceptive trade practices were properly dismissed. I also agree with the majority's decision reversing the trial court's dismissal of Plaintiffs' claim for declaratory relief, but I write separately to address the relief which should be afforded.

Dismissal of Plaintiffs' declaratory judgment claim was error, as the rights of the parties under the contract should have been declared. In *Connor v. Harless*, this Court addressed the validity of an option to purchase at a price to be determined in the future based on at least two appraisals. 176 N.C. App. 402, 626 S.E.2d 755 (2006). We first noted "[i]t is essential to the formation of any contract that there be *mutual assent* of both parties to the *terms of the agreement* so as to establish a meeting of the minds." *Id.* at 405, 626 S.E.2d at 757 (emphasis in original) (quoting *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 550, 613 S.E.2d 322, 327 (2005)). Thus, "as to the essential and material contractual term of price, there must be a meeting of the minds." *Id.* "[A] contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations." *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974).

The option to purchase at issue in *Connor* provided for the price to be an "amount in cash fair market value at the time of such purchase (based on at least two appraisals)." *Connor*, 176 N.C. App. at 406, 626 S.E.2d at 758. We held the term was void because:

*HUNTER, JR., Robert N., J., concurring in part and dissenting in part*

> [N]o mechanism existed within the agreement to address any potential price discrepancies. Specifically, there were no additional provisions stating how to proceed if the appraisals produced vastly different property values. . . . With no specification in the agreement as to how to address . . . greatly varying estimates in the value of defendants' property, the price term is not, as it must be, certain and definite.

*Id.* We ultimately held "[b]ecause there was no meeting of the minds as to the essential term of price, the agreement between plaintiffs and defendants is not an enforceable contract." *Id.*

This case is distinguishable from *Connor* in that here, the parties did provide a solution for resolving potential price discrepancies. Unlike the parties in *Connor*, the parties here provided an additional safeguard to address a potential impasse between the two original appraisers. In the event the two appraisers cannot reach an agreement, the two shall in turn appoint a third appraiser and the three will determine the rental term. This provision of the contract evidences mutual assent, and the parties' intention to be bound to the terms of the agreement. Thus, the contract is not void for vagueness. We should reverse the trial court's dismissal of this claim and remand the case, in order for the trial court to appoint a third appraiser. We are confident the three appraisers will be capable of determining the appropriate price term based upon industry standards.